ROBERT G. GUEMPEL & others, trustees, vs. GREAT
AMERICAN INSURANCE COMPANY & another.[1]

Worcester. March 10, 1981. — May 15, 1981.

Present: GRANT, CUTTER, & BROWN, JJ.

*Mortgage,* Real estate: insurance, foreclosure. *Insurance,* Fire: mort-
gagee's interest.

Where all the evidence in a civil action was documentary, this court could
draw its own conclusions from the evidence despite the third sentence
of Mass.R.Civ.P. 52(a). [848]
A purchaser of mortgaged property at a foreclosure sale does not become
the owner of the property until the deed is executed and delivered,
even in the absence of a memorandum of sale specifying a date for
delivery, at least where the deed is not withheld for an unreasonable
time. [848-849]
Where a mortgagee which had purchased the mortgaged property at a
foreclosure sale failed to give the statutory notices required by G. L.
c. 244, §§ 17A to 17C, as a condition precedent to an action to recover
the deficiency on its mortgage and took no action within a reasonable
time to reopen the foreclosure proceedings in order to give the required
notices, the purchase constituted a discharge of the whole mortgage in-
debtedness, and, therefore, when the property was damaged by fire
some two months after the foreclosure sale but before execution and
delivery of the deed there was no mortgage debt on which the insurer
of the property under a policy of insurance obtained by the mortgagor
could be held liable. [850-852]

CIVIL ACTION commenced in the Superior Court on Oc-
tober 31, 1977.

The case was heard by *Meagher,* J.

*Henry T. Goldman* for the plaintiffs.

*John E. Lecomte (Gerald W. Motejunas* with him) for
Great American Insurance Company.

*John G. Ryan* for Reserve Insurance Company.

_____

[1] Reserve Insurance Company.

CUTTER, J. The plaintiffs, trustees of Hamilton Investment Trust (Hamilton), conveyed property in Leominster to Jayar Colonial Realty Trust (Jayar) and took back a first mortgage. Jayar obtained an insurance policy, issued by Reserve Insurance Company (Reserve) naming Hamilton as first mortgagee, insuring against property damage and loss of rents caused by fire. Hamilton made an entry on February 25, 1976, to foreclose the mortgage because of Jayar's earlier default. Jayar's broker, Rome Insurance Agency, Inc. (Rome), through which the policy had originally been procured, wrote on March 5, 1976, to R. J. Saex Insurance Agency (Saex) which at all relevant times was Reserve's agent. This letter requested that Lomas and Nettleton, managing agents of the Leominster property, and Hamilton, as mortgagee in possession, be added as additional named insureds. Saex replied on March 29 that Reserve was "unwilling to assign the policy to the new owners," and requested the return of the policy as soon as the Jayar trust no longer had an interest in the property. Rome's request was in effect renewed on September 1, 1976, and on October 2, 1976, Saex told Rome that Reserve was unwilling to transfer the policy until it had more information about Hamilton. On October 22, Rome notified Hamilton that Reserve would not transfer the policy and that Rome's attorney advised that, if Hamilton had "taken actual title to the property insured . . . through foreclosure proceedings . . . there . . . [was] no coverage under the policy for" Hamilton as owner.

On August 27, 1976, at the foreclosure sale, Hamilton bid in the property at $250,000. No memorandum of sale was ever executed. On May 31, 1977, Hamilton executed a deed conveying the property to itself. At the time of the sale the mortgage debt exceeded $2,500,000. No action has been taken by Hamilton to recover from Jayar any deficiency on the mortgage.

On October 26, 1976, Robert Nettleton, acting for Hamilton, talked with James Davidson, president of Northeastern Underwriters, Ltd. (Northeastern), an agent of Great

American Insurance Company (Great American). Evidence of their discussion was offered by Great American at trial in the Superior Court by reading parts of Davidson's and Nettleton's depositions (each taken at the instance of Reserve). In any event, as a consequence of the discussion, Northeastern on October 26, 1976, issued to Hamilton a binder, later revised on November 1, 1976, retroactive to October 26, to state correctly Hamilton's name erroneously set out in the first binder.

On October 29, 1976, a fire of undetermined origin caused damage at the Leominster property. A second fire occurred on March 9, 1977.

Hamilton initiated the present complaint on October 31, 1977, to have it declared which insurance company, Reserve or Great American (or both), provided coverage for the first fire loss suffered by it on October 29, 1976. Reserve denied liability essentially because of the change in the nature of Hamilton's interest by reason of the foreclosure proceedings. Great American admitted that it had issued a binder. By counterclaim, however, Great American asserted that it had been agreed with Hamilton that the binder was intended "to be effective only upon the condition precedent that the . . . [policy] issued by Reserve . . . was not in effect," and that, through error in reducing to writing the agreement between Hamilton and Great American or by their mutual mistake, the "conditional nature of the . . . binder was not noted upon the" face of the binder. Accordingly, Great American sought reformation of the binder to reflect what was alleged to have been the intention of the parties to the binder. These allegations, in large measure at least, were admitted by Hamilton.

On December 5, 1979, Hamilton was allowed to amend its complaint to add count 2, seeking recovery from Reserve for its loss of $231,558.30 resulting from the second fire of March 9, 1977. This action was taken at the request of Great American.

The facts are largely covered by stipulations. The only evidence offered at trial, in addition to the stipulations and

their attached exhibits, was the excerpts from the deposi-
tions of Davidson and Nettleton mentioned above and two
written answers to written interrogatories. The principal
issues before the trial judge thus were (1) whether Reserve
on its policy, as of the dates of the losses, respectively, re-
mained liable to Hamilton as mortgagee, and (2) whether
Great American's liability upon its binder was subject to a
condition precedent that Hamilton as mortgagee had no
coverage upon the policy issued by Reserve.

The trial judge, after reviewing the stipulations, deposi-
tions, and correspondence, found that there was extensive
correspondence between Hamilton and Davidson which
resulted in an agreement by Great American to insure Ham-
ilton as owner of the Leominster property, and that there
never was an agreement between Reserve and Hamilton as
owner to insure that property. His action on requests for
rulings of law was consistent with these findings. Judgment
was entered for Hamilton solely against Great American on
its claim for the first fire. Judgment was entered for Re-
serve on Hamilton's claim against it for both fires. Great
American was denied relief on its counterclaim for reforma-
tion of the binder and the counterclaim was dismissed.

1. All the evidence (i.e. the stipulation, and attached ex-
hibits, and the excerpts from written depositions and inter-
rogatories and answers) was documentary. Thus, this court
is in the same position as was the trial judge to decide the
issues. Despite the third sentence of Mass.R.Civ.P. 52(a),
365 Mass. 816 (1974), we may draw our own conclusions
from the evidence with recognition that the trial judge's op-
portunity to appraise all the documents was no better than
ours is now. *Brophy* v. *School Comm. of Worcester,* 6
Mass. App. Ct. 731, 733 (1978). See *Hiller* v. *Submarine
Signal Co.,* 325 Mass. 546, 549, 551 (1950). Compare *Col-
bert* v. *Hennessey,* 351 Mass. 131, 134 (1966).

2. Hamilton and Great American rely strongly on *Schan-
berg* v. *Automobile Ins. Co.,* 285 Mass. 316, 318-319 (1934),
as establishing that until Hamilton, as purchaser at the
forclosure sale, gave itself a deed to the mortgaged proper-

ty, it still was a mortgagee protected by the policy issued by Reserve. Reserve, on the other hand, takes the position that the *Schanberg* case is distinguishable in that one of the terms of the foreclosure sale in that case was that the deed was to be given within ten days of the auction and that the mortgagee as purchaser at the foreclosure sale (at 320) was not bound to take the property after an intervening fire loss, "for the fire absolved them from the duty of taking the deed, and no foreclosure resulted."

The *Schanberg* case has not been often cited. It was mentioned in *Outpost Café, Inc.* v. *Fairhaven Sav. Bank,* 3 Mass. App. Ct. 1, 7-8 (1975), holding that a mortgagor's equity of redemption was barred under G. L. c. 244, § 18, "at least as early as when the memorandum of sale was executed with the purchaser at the foreclosure sale." Here no memorandum of sale was executed. The aspect of the *Schanberg* case now considered was not involved in the *Outpost Café* case, cited on another issue with apparent approval in *Negron* v. *Gordon,* 373 Mass. 199, 206 (1977). We assume, see *Ben-Morris Co.* v. *Hanover Ins. Co.,* 3 Mass. App. Ct. 779 (1975), that the rights of Hamilton as mortgagee to whatever insurance proceeds it is entitled to collect were fixed as of the time of the fire, subject to diminution of the mortgage debt occurring as a result of the foreclosure sale or as a consequence of other later satisfaction. In *Lembo* v. *Parks,* 6 Mass. App. Ct. 850 (1978), where the purchaser at the foreclosure sale bid in the mortgaged property for the full amount of the mortgaged debt, it was held that the mortgagor was entitled to the full proceeds of an insurance payment for a fire loss on the ground that "the mortgage debt was extinguished by the bid at the foreclosure sale." No one of these decisions of this court (even if this court could do so) seems to us to discredit the *Schanberg* case on issues here pertinent. We regard it on such issues as still binding authority, at least in cases where the deed to the purchasing mortgagee or other purchaser was not withheld for an unreasonable time.

3. Reserve contends that because Hamilton failed to pursue Jayar, the mortgagor, for the deficiency on its mortgage, it is barred from recovery on the Reserve policy for each loss. At the time of the first loss, the mortgage liability was in excess of $2,500,000 and the amount of Hamilton's bid at the foreclosure sale was $250,000. The record does not show what Jayar's financial condition was at the time of the foreclosure sale, but it is not unreasonable to infer that Hamilton would have pursued as large a deficiency as then existed for its own advantage if the pursuit had any promise of being fruitful.

Reserve places reliance on *Coppotelli* v. *Insurance Co. of No. America,* 484 F.Supp. 1327 (E.D.N.Y.), *S.C.,* 631 F.2d 146, 149 (2d Cir. 1980), which held that where, at the foreclosure sale, third mortgagees bid in the mortgaged property at substantially less than the mortgage debt but sought no deficiency judgment, they had extinguished the mortgage debt. The decision rested on a New York statute essentially providing that, absent a "motion for a deficiency judgment . . . the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt." N.Y. Real Prop. Acts. Law § 1371(3). Reserve contends that the same effect should be given to G. L. c. 244, §§ 17A & 17B, inserted by St. 1945, c. 604, § 1. See § 17C, inserted by St. 1945, c. 604, § 1, and 29 Mass.L.Q. (No. 4) 44-50 (1944). These sections impose (a) a statute of limitations upon actions to recover a deficiency, and also (b) a condition precedent to such actions, viz., that the mortgagee give, in advance of foreclosure, certain notices of intention to foreclose so that the mortgagor (and perhaps others) may take steps to protect their interests. Of these sections Chief Justice Qua, in *Palumbo* v. *Audette,* 323 Mass. 559, 560 (1949), said, "We think it plain that this statute was designed for the protection of mortgagors and of those liable with them or through them on mortgage obligations. The notice was required so that such persons could look out for their interests at the foreclosure sale." Despite the "familiar law that the ordinary statute of limitations

does not bar the debt, but only the remedy," (see Aldrich, J., in *Phoenix Electronics, Inc.* v. *United States,* 164 F.Supp. 614, 615 [D. Mass. 1958]), we treat §§ 17A to 17C as more than an "ordinary" statute of limitations. Under these sections, if the mortgagee intends to go after a deficiency judgment (in the event that there is a purchase at the foreclosure sale for less than the remaining mortgage debt), the mortgagee will be barred from doing so if he has failed to give the necessary statutory notices. We thus regard §§ 17A to 17C as having very much the practical effect given to the New York statute considered in the *Coppotelli* case, of treating the purchase at the foreclosure sale, absent the prior statutory notice to the mortgagor, as sufficiently discharging the mortgage debt (at least in the absence of any other mortgage security as to which no foreclosure had been completed) to prevent any further effective recovery of it by the mortgagee or any person claiming in its stead.

Hamilton argues that, until it delivered the deed to itself (and thereby under the *Schanberg* case, 285 Mass. at 319, completed the foreclosure), it would have been possible for it to reopen the foreclosure, give the necessary notices under §§ 17A to 17C, and advertise anew. It suggests that thus it would put itself in a position to comply with the provision of the statutory standard fire policy (G. L. c. 175, § 99, as amended through St. 1974, c. 498, § 1) giving to the insurer opportunity to elect to pay the whole mortgage debt and to take over the mortgage and the mortgage note. Hamilton also argues that Reserve's denial on February 7, 1977, of liability for the loss of October 29, 1976, was essentially a repudiation of any such election. This denial, so Hamilton contends, in effect estops Reserve now to resist payment for the first fire loss.

The foreclosure sale took place on August 27, 1976. Because no memorandum of sale was ever executed, no time for the giving of a deed to Hamilton, as purchaser, was specified. The first fire loss occurred on October 29, 1976. Reserve's denial of liability was dated February 7, 1977. This proceeding was not begun until October 31, 1977. Cer-

tainly, by shortly after Reserve's letter of February 7, 1977, and probably substantially before that, Hamilton had been given more than a reasonable time to reopen the foreclosure proceedings if it desired to do so. It never did do so before it gave itself a deed to the foreclosed property on May 31, 1977. By that deed, in view of G. L. c. 244, §§ 17A to 17C, as we interpret them, it lost completely the possibility of reopening the foreclosure proceedings. There is no indication in the record that Hamilton relied on Reserve's letter of February 7, 1977, as a basis for not attempting then to reopen the foreclosure proceedings. We perceive in the circumstances no basis for any estoppel of Reserve. Hamilton's acceptance of the deed of May 31, 1977, in the absence of other mortgage security as to which foreclosure had not been started or remained incomplete, (cf. *Ware Sav. Bank* v. *Gremo, post* 1016 [1981]), in effect constituted transfer of the foreclosed property as a discharge of the whole mortgage indebtedness. The trial judge, on this record, thus correctly granted Reserve's second request for ruling that no "amount is due Hamilton on its mortgage debt as a result of its bid at the foreclosure sale and its failure to bring an action for any deficiency against Jayar within the period described in G. L. c. 244, [§] 17A."[2]

4. Accordingly, Reserve is not liable on its policy for either fire loss to Hamilton (whose interest was only that of mortgagee to the extent of the mortgage debt). There thus is no occasion to consider whether Great American's binder was conditional in the sense that Great American was to be liable upon it only if Reserve was not liable on its policy.

*Judgment affirmed.*

---

[2] We need not decide questions, not presented in the *Schanberg* case, whether a memorandum of sale at foreclosure may specify a date for delivery of the deed at an unreasonably distant future date or whether, if no date is specified, the deed must be executed and delivered within a reasonable time.