Transamerica v. Pelham Bank          CV-93-296-B    09/02/94

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Transamerica Insurance Co.</u>

   v.                                  Civil No. 93- 296-B

<u>Pelham Bank & Trust Co., et. al.</u>


## O R D E R


This case arises from an insurance coverage claim made by Pelham Bank and Trust Company on its mortgagor's commercial property policy.  The insurer, Transamerica Insurance Company, denied Pelham's claim and commenced this declaratory judgment action contending that Pelham forfeited its right to recover on the policy by foreclosing on the insured property and releasing the mortgagor from liability for any deficiency remaining after foreclosure.  The parties have filed cross motions for summary judgment.  For the reasons that follow, I deny both motions.


## FACTS

Pelham made a number of loans to JRD of New Hampshire, Limited and related entities that were secured by several properties, including a warehouse in Salem, New Hampshire.  After JRD and the other borrowers defaulted, Pelham instituted

foreclosure proceedings. The borrowers responded with a state court suit to enjoin the foreclosures. However, on the day prior to the first foreclosure sale, Pelham and the borrowers reached a settlement agreement that (i) released Pelham from the borrowers' claims; (ii) allowed the foreclosures to take place; and (iii) with limited exceptions, released the borrowers from liability for any deficiency remaining after the foreclosures. Pelham then foreclosed on several properties, including the warehouse. After the foreclosures, a deficiency of approximately $900,000 remained on the warehouse loans.

Transamerica insured the warehouse and the other properties subject to Pelham's mortgages in a commercial property policy issued to JRD. The policy listed Pelham as the mortgagee. Before Pelham commenced foreclosure proceedings, the warehouse sustained approximately $200,000 in vandalism damage. Pelham submitted a claim for the damage under the policy's mortgage clause after completing the foreclosure.[1] Transamerica denied

---

[1]The mortgage clause provides in pertinent part:
  b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

  c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started

2

the claim and filed the present action.

foreclosure or similar action on the building or structure.
d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:
   (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
   (2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and
   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.
All of the terms of this Coverage Part will then apply directly to the mortgage holder.
e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
   (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
   (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.
At our option we may pay to the mortgage holder the whole principle on the mortgage plus any accrued interest.  In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

3

## STANDARD OF REVIEW

In considering the cross motions for summary judgment, I bear in mind that summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); accord Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). A "material issue" is one that "affect[s] the outcome of the suit . . . ." Anderson, 477 U.S. at 248. The burden is upon the moving party to aver the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, according the non-movant all beneficial inferences discernable from the evidence. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). If a motion for summary judgment is properly supported, the burden shifts to the non-movant to show

4

that a genuine issue exists.  <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1516 (1st Cir. 1983).

<b><u>DISCUSSION</u></b>

**I.  <u>Transamerica's Summary Judgment Motion</u>**

The parties agree that Pelham would have been entitled to recover for the vandalism damage under the policy's mortgage clause if Pelham had made its claim before settling with JRD. However, Transamerica cites two related reasons why the settlement and subsequent foreclosure bar Pelham's claim.  First, it argues that Pelham lost its insurable interest in the property when it released JRD from further liability and foreclosed on the warehouse.  Second, it contends that the settlement improperly impaired Transamerica's right under the policy to assume JRD's notes and mortgages.  I find neither argument persuasive.

A.  <u>Pelham's Insurable Interest</u>

In arguing that Pelham lost its insurable interest in the property by settling with JRD, Transamerica relies on <u>Whitestone Savings and Loan Ass'n v. Allstate Ins. Co.</u>, 321 N.Y.S. 2d 862 (1971) which disallowed a mortgagee's insurance claim after its mortgage debt had been discharged.  Quoting <u>Rosenbaum v. Funcannon</u>, 308 F.2d 680, 684 (9th Cir. 1962), the court reasoned

5

that

> '[t]he rights of a loss-payable mortgagee are
> determined as of the time of the loss.  Therefore, an
> extinguishment of a mortgage or deed of trust by
> foreclosure after the loss does not affect the
> liability of the insurance company to a loss-payable
> mortgagee. . . .
>
> It must be borne in mind, however, that extinguishment
> of a mortgage or deed of trust by sale of the property
> at foreclosure does not necessarily extinguish the debt
> itself.  Only to the extent that the mortgagee receives
> payment upon the debt through the foreclosure is the
> debt itself extinguished.  If the security property
> does not bring enough to pay the debt, the [debt]
> itself remains to the extent that it is unpaid,
> notwithstanding extinguishment of the mortgage as such
> by sale to third parties or acquisition by the
> mortgagee as bidder at foreclosure sale. . . .
>
> It is in this sense that the rule is quite properly
> stated to the effect that extinguishment of the
> mortgage does not affect the liability of an insurance
> company to a loss-payable mortgagee. . . .
>
> On the other hand, it is well settled that full or
> partial extinguishment of the debt itself, whether
> prior to the loss or subsequent to the loss, precludes
> to the extent thereof, any recovery by the loss-payable
> mortgagee for the plain and sole reason that the debt,
> itself, has been to that extent extinguished.'

321 N.Y.S.2d at 865 (citations omitted).

The basic premise from which Rosenbaum, Whitestone, and their progeny proceed is that the mortgagee is entitled to only one recovery of its debt.  Rosenbaum, 308 F.2d at 684 ("such claim is obviously limited to such balance, if any, as remains on

6

the debt, and, in such situation the important point is whether the property on foreclosure sale brought enough to satisfy the property in full or only in part. . . [o]therwise. . . there would be double recovery"); Whitestone, 321 N.Y.S.2d at 864 ("[b]ecause a mortgagee is entitled to one satisfaction of his debt and no more. . ."); Fireman's Fund Mortgage Corp. v. Allstate Ins. Co., 838 P.2d 790, 795 (Alaska 1992) ("courts that espouse this rule are primarily concerned with unjust enrichment . . ."); Calvert Fire Ins. Co. v. Environs Dev. Corp., 601 F.2d 851, 856 (5th Cir. 1979) ("[t]his rule is intended to prevent a creditor from receiving a double payment . . ."); Nationwide Mutual Fire Ins.. Co. v. Wilborn, 279 So.2d 460, 464 (Ala. 1973) ("to allow recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to mortgagee's unjust enrichment"). Thus, recovery is barred in situations where the mortgagee bids bid the full amount of the mortgage at foreclosure and then seeks additional recovery from the insurer, Kessler v. Government Employees Ins. Co., 579 N.Y.S.2d 13 (1992); Calvert, 601 F.2d at 856, or where the mortgagee accepts the deed in lieu of foreclosure for full satisfaction of the debt. Mann v. Glens Falls Ins. Co., 541 F.2d 819, 823 (9th Cir. 1976); see also United States v. Lititz Mutual Ins. Co., 694 F. Supp. 159, 161

7

(M.D.N.C. 1988).  However, as at least some of these decisions recognize, a mortgagee retains a viable action against the insurer even after the insured property is sold in foreclosure if the mortgagee has not recovered the full amount of its debt through the foreclosure sale.  Fireman's Fund, 838 P.2d at 796; Burritt Mutual Savings Bank v. Transamerica Ins. Co., 428 A.2d 333, 338 (Conn. 1980).  See also Hadley v. N.H. Fire Ins. Co., 55 N.H. 110, 116 (1875) ("I do not see how the foreclosure of the mortgage could in any way have operated to defeat the plaintiff's right to recover the amount which remained due on the mortgage.").

The issue left unresolved by these cases is whether a mortgagee's release of its mortgagor from a deficiency remaining after foreclosure bars the mortgagee's subsequent property insurance claim.  Transamerica argues that it does because the mortgagee's insurable interest is extinguished for all practical purposes when the security is foreclosed and the mortgagor is released from further liability.[2]  Pelham argues that it does

_____

[2]Transamerica has identified one decision which arguably supports its position.  In Guempel v. Great American Ins. Co., 420 N.E. 2d 353 (Mass. App. 1981), the mortgagee foreclosed on the property without giving proper notice to the mortgagor. Under Massachusetts law, such a foreclosure operates as a discharge of the mortgage debt, regardless of the amount realized

8

not, because it still has an unreimbursed deficiency, regardless of whether it retains any right to recover against JRD.

Resolving this question in light of the insurable interest rule's manifest purpose, I agree with Pelham that its right to recover against Transamerica is not extinguished simply because it released JRD from any deficiency remaining after the warehouse foreclosure sale.  If Pelham is allowed to maintain its claim against Transamerica, it will not reap the double recovery that the rule was intended to avoid.  Moreover, following Transamerica's approach could well result in a windfall for the insurer if its is allowed to collect premium payments without having to pay an otherwise covered loss simply because the mortgagee and its borrower settle their own dispute before the mortgagee makes its insurance coverage claim.  I find nothing in the language of the policy that dictates such a result.[3]

---

at the foreclosure sale.  Thus, the court reasoned that the mortgagee's insurable interest in the property was extinguished by the foreclosure and, therefore, it could make no claim against the mortgagor's property insurance policy.  Id. at 356.  This case is distinguishable for the obvious reason that the foreclosure extinguished the debt by operation of law whereas, in this case, the settlement agreement merely denied the mortgagee further recourse against the mortgagor.

[3]Neither party defends its position by relying on policy language.  Presumably, the textual basis for the insurable interest rule is the policy provision obligating the insurer to

B.  Transamerica's Assignment Rights

The policy's mortgage clause gives Transamerica the option
to "pay the mortgage holder the whole principle on the mortgage
plus accrued interest."  The policy further provides that "[i]n
this event your mortgage note will be transferred to us and you
will pay your remaining mortgage debt to us."  Although the
mortgage clause does not contain an anti-impairment provision,
Travelers nevertheless contends that Pelham's settlement with JRD
bars its right to recover on the policy because it improperly
impaired Traveler's assignment rights.

In making this argument, Travelers presumably relies on the
policy's transfer of rights clause which provides in pertinent
part:

>        **1.   Transfer of Rights of Recovery Against**
>        **Others to Us**
>        If any person or organization to or for whom
>        we make payment under this Coverage Part has

---

pay a mortgagee's covered claims to the extent that "interests
may appear."  I cannot construe this vague reference as an
unambiguous mandate that a mortgagee loses its insurable interest
if it agrees not to proceed against the mortgagor for any
deficiency remaining after foreclosure.  Since a reasonable
alternative reading would preserve the mortgagee's right to
recover on the policy to the extent that a deficiency remains
unsatisfied by the foreclosure sale, I must adopt the more
liberal interpretation advocated by Pelham.  Trombly v. Blue
Cross/Blue Shield, 120 N.H. 764, 770, 423 A.2d 980, 984 (1980)
(ambiguous policy terms are to be construed against the insurer).

> rights to recover damages from another, those
> rights are transferred to us to the extent of
> our payment. That person or organization
> must do everything necessary to secure our
> rights and must do nothing after loss to
> impair them.

I cannot accept Transamerica's position, however, because the transfer of rights clause contains an exception which allows an insured to waive its rights against another insured even if the waiver impairs Transamerica's transfer rights. Transamerica inexplicably argues that this exception does not apply to its assignment rights under the mortgage clause. However, it identifies no language in the policy to support its position. Moreover, an assignment of rights in a note and mortgage is plainly a transfer of rights that is subject to both the policy's general transfer of rights clause and its limited exception. Thus, Transamerica is not entitled to summary judgment on this basis.

## II.  Pelham's Summary Judgment Motion

Pelham concedes that it cannot recover more than the amount of the deficiency remaining on the warehouse notes and mortgages. While the parties have stipulated that the foreclosure sale reduced the deficiency to approximately $900,000, they have not

11

agreed on the value of the consideration Pelham received from JRD pursuant to the settlement. Since JRD agreed in the settlement not to interfere with the foreclosure sales and not to assert other claims against Pelham, the value of these promises to Pelham should presumably be considered in determining the true deficiency remaining on the warehouse loans. Admittedly, since Pelham's insurance claim is for only $200,000, the value Pelham received in the settlement will not affect its right to recover on its insurance claim unless it exceeds $700,000. Nevertheless, I am unable to grant Pelham's motion for summary judgment while this issue remains unresolved.

## CONCLUSION

For the reasons set forth herein, Transamerica's motion for summary judgment (document no. 10), Pelham's motion for summary judgment (document no. 9) and intervenor New Hampshire Insurance Company's motion for summary judgment (document no. 15) are denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

September 2, 1994

12

cc:   Ellen McCauley, Esq.
      John M. Sullivan, Esq.
      Corey Belobrow, Esq.