PAUL MILES-MATTHIAS & another[1] *vs.* ZONING BOARD OF
APPEALS OF SEEKONK & another.[2]

No. 13-P-635.

Bristol. November 14, 2013. - February 11, 2014.

Present: RAPOZA, C.J., CYPHER, & FECTEAU, JJ.

*Zoning*, Timeliness of appeal, Accessory building or use, Board of appeals:
decision, By-law. *Notice,* Timeliness.

In a civil action brought in Superior Court challenging the decision of a town
zoning board of appeals that the defendant land owner's proposed common
driveway was permissible under the town's zoning by-law, the Superior
Court judge erred in entering judgment in favor of the plaintiff abutters,
where the Superior Court lacked jurisdiction to hear the appeal, given that
the plaintiffs' appeal to the zoning board was untimely (in that the plaintiffs
had adequate notice of the building commissioner's decision but did not
appeal within the thirty-day period) [780-784]; further, even if the appeal
had been timely, the judge erred in concluding that the proposed common
driveway was not a permissible accessory use under the by-law [784-790].

CIVIL ACTION commenced in the Superior Court Department on
August 16, 2010.

The case was heard by *Robert J. Kane,* J.

*Marc E. Antine* for John Dias.

*Gregory D. Lorincz* (*John Jacobi, III,* with him) for the
plaintiffs.

FECTEAU, J. Defendant John Dias appeals from a Superior
Court judgment in favor of the plaintiffs, Paul Miles-Matthias
and Linda Coffin, which overturned a zoning board decision
that Dias's proposed common driveway was permissible under
the town of Seekonk's zoning by-law. Specifically, Dias claims
the judge erred in finding (1) that the Superior Court and the
zoning board had jurisdiction because the plaintiffs' appeal to
the zoning board was timely, (2) that the plaintiffs, as abutters,
had the requisite standing to bring the action, and (3) that

[1]Linda Coffin.
[2]John Dias.

Seekonk's zoning by-law prohibits common driveways. The judge correctly concluded that the plaintiffs, as abutters, have standing to prosecute the appeal.[3] However, because the plaintiffs' appeal was untimely and the decision below relied upon misinterpretation of the zoning by-law, we reverse.

1. *Background.* The basic facts found by the judge and which underlie this appeal are not disputed. The plaintiffs own and reside at premises known as 363 Ledge Road in the town of Seekonk, which they purchased on June 28, 1985. The plaintiffs and another neighbor share an easement in common over a pathway of land owned partially by the plaintiffs and partially by Dias. This common driveway was in existence before Seekonk adopted its first zoning by-law in 1942. After the plaintiffs purchased their land, a home was constructed on what is now known as lot 4 and on December 21, 2007, Dias purchased property to the south and east of the plaintiffs, including lot 4 and what are now known as lots 1-3.

On March 11, 2008, the Seekonk planning board endorsed Dias's plan to divide his land off Ledge Road into six lots as an approval-not-required plan (ANR plan) pursuant to G. L. c. 41, § 81P. Although lots 1-3 on Dias's ANR plan had legal frontage on Arcade Avenue, the presence of wetlands prevented the lots from easily having access to this street. Therefore, in the ANR plan, Dias proposed to access lots 1-3 using the common driveway off Ledge Road. Dias planned to expand the driveway currently servicing Dias's lot 4, the plaintiffs' lot, and another neighbor's property so that the common driveway to lots 1-3 would be entirely on Dias's land.

Dias then applied to the town's building commissioner for authority to install the common driveway extending from Ledge Road to service lots 1-3. Upon learning of Dias's application, the plaintiffs spoke with the building commissioner to voice their opposition to Dias's proposed use of the common driveway. Then, on February 26, 2010, Dias's attorney wrote to the build-

---

[3]Substantially for the reasons stated in the judge's opinion, we discern no error in his finding that the plaintiffs have standing. Moreover, we conclude that Dias did not effectively rebut the plaintiffs' presumed standing as abutters. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 34-35 (2006) ("[A]n abutter is presumed to have standing until the defendant comes forward with evidence to contradict that presumption").

ing commissioner regarding a zoning determination for the common driveway. Soon thereafter, the plaintiffs became aware of Dias's zoning request and from about the time of the request, February 26, 2010, to about March 12, 2010, the plaintiffs spoke to building commissioner on a "fairly regular basis."

On March 26, 2010, the building commissioner mailed her decision to Dias approving the common driveway as a permissible means of access to lots 1-3, and as an accessory use under Seekonk's zoning by-law. On April 14, 2010, the plaintiffs learned of the building commissioner's decision and requested a written copy. That same day, the building commissioner mailed a copy of her zoning determination to the plaintiffs. The plaintiffs did not receive the building commissioner's letter until April 19, 2010. On April 22, 2010, the plaintiffs visited town hall to learn how to perfect their appeal, and a few days later, on April 27, 2010, the plaintiffs filed applications for a certificate of good standing and for a certified abutters list, both of which were required to appeal the building commissioner's decision to the Seekonk zoning board. Finally, on May 3, 2010, the plaintiffs filed their appeal.

After a public hearing, the zoning board voted three to two to overturn the building commissioner's approval of the common driveway. However, because G. L. c. 40A, § 15, requires four votes to overturn the building commissioner, the zoning board ultimately affirmed the building commissioner's determination that Dias's driveway was permissible.

Thereafter, the plaintiffs appealed to the Superior Court. Dias argued that the plaintiffs' appeal must fail because the plaintiffs lacked standing, their appeal to the zoning board was untimely, and a common driveway was a permissible use under the Seekonk by-law. The judge, however, overturned the zoning board's decision and found that the plaintiffs' appeal was timely, the plaintiffs had standing, and the Seekonk by-law prohibited common driveways.

2. *Discussion.* a. *Timeliness of appeal to zoning board.* Under G. L. c. 40A, § 15, a party aggrieved by a building commissioner's determination must file the appeal within thirty days of the decision. In this case, the building commissioner issued her decision on March 26, 2010. Therefore, an appeal from this

decision had to be filed no later than April 25, 2010. The plaintiffs, however, did not file their appeal with the zoning board until May 3, 2010.

In finding that the plaintiffs' appeal was timely, the judge found that the plaintiffs "received adequate notice for filing an appeal on April 14, [2010]," the date the plaintiffs learned of the building commissioner's decision and requested a written copy. The judge reasoned that "[i]t cannot reasonably be expected that [the plaintiffs] would continue to visit [t]own [h]all and inquire of [the building commissioner] as to the status of the decision." The judge also noted that the appeal on May 3rd, "only constituted a modest deviation from the thirty-day requirement."

In reviewing a matter wherein the trial judge was the finder of fact, "the findings of fact of the judge are accepted unless they are clearly erroneous . . . . We review the judge's legal conclusions de novo." *T.W. Nickerson, Inc.* v. *Fleet Natl. Bank*, 456 Mass. 562, 569 (2010) (citations omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309 (1981), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). "Whether notice is adequate is a question of fact that depends on the particular circumstances . . . ." *Connors* v. *Annino*, 460 Mass. 790, 798 n.10 (2011).

In *Connors*, the Supreme Judicial Court considered whether an appeal from the grant of two building permits, thirty-five days after the permits were issued, was timely. In that case, the plaintiff neighbor was aware that the defendant had applied for the two building permits. *Id.* at 792. The building inspector ultimately issued the two building permits and the plaintiff received actual notice ten days after the permits were issued. *Ibid.* Thereafter, the plaintiff filed an appeal to the zoning board thirty-five days after the permits were issued. *Id.* at 792-793. Nevertheless, the *Connors* court held that the zoning board and the trial court lacked jurisdiction to hear the plaintiff's appeal because his appeal was untimely. *Id.* at 799. Like the plaintiff

in *Connors*, who was aware of the defendant's application for building permit, the plaintiffs here were aware of Dias's zoning request. The plaintiffs were, therefore, at least constructively aware that the building commissioner would issue a decision on Dias's request.

In *Connors*, however, the parties agreed that twenty days of actual notice "constituted adequate notice to the plaintiffs." *Id.* at 798 n.10. By contrast, in this case, whether the plaintiffs received adequate notice is in dispute. Here, the plaintiffs received actual notice on April 14, 2010, nineteen days after the building commissioner's March 26th decision. Consequently, the plaintiffs rely on footnote 10 in *Connors* where the court acknowledged "that difficult questions concerning adequacy of notice may arise at the margins — if, for example, an aggrieved party were to receive notice twenty-eight days after a permit's issuance." *Ibid.* Arguably, because the plaintiffs still had eleven days of actual notice, they still had the ability to appeal within the required thirty days.

Even if we accept the plaintiffs' argument that eleven days of actual notice is insufficient, in *Gallivan* v. *Zoning Bd. of Appeals of Wellesley*, 71 Mass. App. Ct. 850, 858-859 (2008), this court noted that in determining whether a party had an adequate period to file its appeal, the court will consider not only actual notice, but constructive notice, putting a party to "a duty of inquiry." Therefore, "[a]dequate notice may be actual or constructive. A party has constructive notice when the evidence is 'sufficient to place on [that party] a duty of inquiry' regarding the . . . permit." *Richardson* v. *Board of Appeals of Chilmark*, 81 Mass. App. Ct. 912, 913 (2012), quoting from *Gallivan* v. *Zoning Bd. of Appeals of Wellesley, supra* at 859.

In the present case, the plaintiffs were aware of Dias's February 26, 2010, zoning request shortly after Dias's letter was sent. From February 26, 2010, to about March 12, 2010, the plaintiffs spoke to the building commissioner on a "fairly regular basis." The plaintiffs also decided, from the time they learned of Dias's request, that they would appeal any decision allowing Dias to use the common driveway for lots 1, 2 and 3. Therefore, the plaintiffs were on constructive notice from early 2010, when they first learned that Dias had requested a zoning determina-

tion, but about which they failed to inquire after approximately March 12th. See *Richardson* v. *Board of Appeals of Chilmark, supra* (The plaintiff was on constructive notice where he had "vigilantly monitored [the defendant's] plans for construction and fought his efforts at multiple steps"). Under the circumstances, the plaintiffs here failed to satisfy their duty of inquiry.

Finally, unlike the plaintiff in *Gallivan,* who appealed five months after the issuance of a building permit, the plaintiffs in this case missed the thirty-day deadline by a week. In *Connors,* the plaintiff filed a petition of appeal only thirty-five days after the building permits had issued and the Supreme Judicial Court nevertheless held that the appeal was untimely. See *Connors,* 460 Mass. at 791-793. Thus, the judge's consideration that the plaintiffs' appeal was only a "modest deviation" from the statutory requirement is inconsistent with applicable case law and the directive of statute. See G. L. c. 40A, § 15, as amended by St. 1987, c. 498, § 3 ("Any appeal to a board of appeals from the order or decision of a zoning administrator, if any, appointed in accordance with section thirteen *shall* be taken within thirty days of the date of such order or decision" [emphasis added]); *Connors, supra* at 796. While we note that the court in *Connors,* quoting from *Gallivan* v. *Zoning Bd. of Appeals of Wellesley,* 71 Mass. App. Ct. at 858, stated that "it is not appropriate to create a bright line rule defining what constitutes 'adequate notice,' " in this case, the plaintiffs had adequate notice to appeal within the thirty-day period. Therefore, the fact that their untimely appeal was a "modest deviation" from the statute is irrelevant. See *Connors, supra* at 798 n.10.

In sum, the judge's decision, that the thirty-day statutory appeal period started when the plaintiffs were actually informed of the zoning determination, incorrectly failed to consider their knowledge of the request and their corresponding duty of inquiry, which they neglected after March 12, 2010. See *Gallivan* v. *oning Bd. of Appeals of Wellesley, supra* at 857; *Richardson* v. *Board of Appeals of Chilmark,* 81 Mass. App. Ct. at 913. Therefore, the plaintiffs had adequate notice of the building commissioner's March 26, 2010, decision at a point in time sufficient for them to honor the thirty-day appeal period; consequently, their appeal was untimely, thereby depriving the zon-

ing board and the Superior Court of jurisdiction to entertain their appeal.

b. *Accessory use.* Even if the plaintiffs' appeal were to be considered timely, the judge erred in deciding that the proposed common driveway was not a permissible accessory use under Seekonk's zoning by-law. In concluding that the by-law prohibited Dias's common driveway, the judge's decision relied upon three incorrect subsidiary rulings; that (1) the Seekonk zoning by-law was prohibitive, (2) deference is owed to the three members of the zoning board who agreed that a common driveway was not a permissible accessory use, and (3) general rules of statutory construction support the finding that a common driveway is prohibited under the by-law.

In reviewing whether a common driveway is an accessory use, we recognize Dias's argument that a common driveway is not an accessory use at all, but instead, an extension of the principal use. In support of this argument, Dias cites *Beale* v. *Planning Bd. of Rockland,* 423 Mass. 690, 694 (1996). In that case, the court noted the following:

> "Use of land in one zoning district for an access road to another zoning district is prohibited where the road would provide access to uses that would themselves be barred if they had been located in the first zoning district. In such a situation, the access is considered to be in the same use as the parcel to which the access leads."

*Id.* In other words, an access road to a commercial district would not be permitted in a residential district because the access road is considered an extension of the commercial use. However, the driveway at issue here is in a residential zone and offered to access residential homes. Therefore, the issue in this case is distinct from *Beale* and the cases cited therein.

The plaintiffs rely on two provisions to assert that the zoning by-law is prohibitive, and the judge agreed. Section 1 of the by-law, entitled "Purpose" provides the following instruction on how to reconcile conflicting interpretations:

> "Since the purpose of these by-laws is to promote the quality of life and environment in Seekonk by regulating property uses, whenever there appear to be multiple

interpretations of points within these by-laws, the more restricting or more controlling interpretation is intended and will prevail unless ruled otherwise by due course of law."

Referring to this section, the judge stated, "[e]ven if the meaning of accessory use in relation to a common driveway created an ambiguity, the [t]own's [b]y-[l]aws provision on interpretation would require a restrictive interpretation . . . [which] would negate a view that a driveway could service more than one lot." However, we view section 1 of the by-law, which was meant to clarify when "there appear to be multiple interpretations" of provisions, as inapplicable in this case since accessory use is not defined in a conflicting manner in two different provisions, but rather, it is not defined at all.

The plaintiffs also rely on section 4.1 entitled "Zoning Affects Every Structure and Use." This section states, "No structure or land shall be hereafter used and no structure or part thereof shall be erected, altered, or moved unless in conformity with the regulations herein specified for the district in which it is located, expect as otherwise provided." In concluding that the Seekonk by-law was prohibitive, the judge favorably compared section 4.1 to the zoning by-law at issue in *RHB Dev., Inc.* v. *Zoning Bd. of Appeals of Duxbury*, 5 LCR 166, 167 (1997), where the Land Court found the Duxbury zoning by-law was prohibitive "by its express terms." The Duxbury by-law at issue in *RHB Dev. Inc.*, stated, under the title "Permitted Uses," that "[n]o building shall be erected or altered and no building, premises or land shall be used for any purpose or in any manner other than as permitted as set forth in [s]ection 402 [explicitly listing allowed uses]." Therefore, the Duxbury by-law is significantly more restrictive than the Seekonk by-law. Section 4.1 of the Seekonk by-law simply states that no building shall be erected or land shall be used unless in conformity with the general zoning regulations, thus ensuring that all structures and uses must conform to applicable regulations: it neither states nor implies that those uses not expressly allowed are prohibited. Moreover, an interpretation that this by-law is prohibitive is at odds with a by-law that neither defines nor lists permissible accessory uses.

Further, that the Seekonk by-law is permissive rather than prohibitive is suggested by other sections of the by-law. For example, section 5.3 states that "[p]re-existing legal noncon-forming structures or uses may be extended or altered by special permit upon a finding of the Zoning Board of Appeals that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighbor-hood." See *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 478 (1986) ("[W]e note that . . . [the by-law] is 'permissive in spirit' in that it sanctions, by special permit, changes in nonconforming uses"); *Titcomb* v. *Board of Appeals of Sandwich*, 64 Mass. App. Ct. 725, 731 (2005), quot-ing from *Murray, supra* ("[W]e read the spirit of the Sandwich by-law as permissive, so long as the board is satisfied that the proposed use is not 'substantially more detrimental than the existing nonconforming use to the neighborhood' "). "[A] zon-ing by-law must be read in its complete context and be given a sensible meaning within that context." *Board of Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 826 (1973). The Seekonk by-law, therefore, is in marked contrast from other so-called "prohibitive" zoning by-laws. See, e.g. *APT Asset Mgmt. Inc.* v. *Board of Appeals of Melrose*, 50 Mass. App. Ct. 133, 138 (2000) (zoning by-law was prohibitive where it stated "[a]ny use not listed [in the table of use regulations] shall be construed to be prohibited"); *Tanner* v. *Board of Appeals of Boxford*, 61 Mass. App. Ct. 647, 648 (2004) (zoning by-law was prohibitive where it stated that "[a]ny use not specifically listed herein or otherwise permitted in a district shall be deemed as prohibited"). Con-sequently, the by-law in this case is permissive and the judge's interpretation that it is prohibitive was incorrect.

Second, the judge determined that since the by-law lacks a definition of accessory use, deference is due to the zoning board's interpretation of its own by-law. "Deference is also owed to a local zoning board because of its special knowledge of 'the his-tory and purpose of its town's zoning by-law.' Accordingly, a judge must give 'substantial deference' to a board's interpreta-tion of its zoning bylaws and ordinances." *Wendy's Old Fashioned Hamburgers of N.Y., Inc.* v. *Board of Appeal of Bil-lerica*, 454 Mass. 374, 381 (2009) (citations omitted).

In this case, although three members of the zoning board agreed with the plaintiffs that Dias's proposed driveway was not an accessory use, the board lacked the requisite supermajority needed under G. L. c. 40A, § 15, to overturn the building commissioner.[4] Therefore, the zoning board's decision affirmed the building commissioner's determination that Dias's common driveway was a permissible accessory use. Cf. *Mauri* v. *Zoning Bd. of Appeals of Newton*, 83 Mass. App. Ct. 336, 339 (2013) ("Although the board voted three-to-two to overturn the decision of the inspector, the vote required a super-majority of four members, and the board, therefore, affirmed the inspector's decision to grant the building permit"). Nonetheless, the judge gave deference to the three members of the zoning board who voted to overrule the building commissioner rather than to the board's ultimate decision to affirm the commissioner's determination. General Laws c. 40A, § 15, expressly requires four members of a five member board to "reverse any order or decision of any administrative official." Therefore, if any deference is owed under this circumstance, it is to affirm the building commissioner's determination to allow the common driveway, rather than the decision of the three members of the zoning board who voted against it. To give deference to the three member majority would undermine § 15's requirement that a supermajority is needed to overturn the building commissioner.

Finally, because the Seekonk by-law does not define accessory use, the judge utilized general rules of construction, presumption, and interpretational aids to discern whether a common driveway is an accessory use. "In the absence of an express definition, the meaning of a word or phrase used in a local zoning enactment is a question of law . . . to be determined by the ordinary principles of statutory construction." *Tanner* v. *Board of Appeals of Boxford*, 61 Mass. App. Ct. at 649, quoting from *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 290 (1981). "A zoning by-law should be construed sensibly, with regard to its underlying purposes, and,

---

[4]General Laws c. 40A, § 15 states: "The concurring vote of all members of the board of appeals consisting of three members, and a concurring vote of four members of a board consisting of five members, shall be necessary to reverse any order or decision of any administrative official under this chapter or to effect any variance in the application of any ordinance or by-law."

if possible, as a harmonious whole." *Valcourt* v. *Zoning Bd. of Appeals of Swansea*, 48 Mass. App. Ct. 124, 129 (1999) (citations omitted).

When the judge erroneously gave deference to the three members of the zoning board who voted that a common driveway does not meet the definition of an accessory use, he stated that this interpretation "fails to conflict with the [t]own's [b]y-Laws." Thus, the judge relied on the three members of the zoning board who found that "because a shared driveway is not allowed as a principal or accessory use and it is not specifically mentioned in the [z]oning [b]y-law, then it is not an allowed use." However, as discussed above, ruling that common driveways are prohibited because they are not expressly included as a permissible accessory use is incorrect. Because Seekonk's by-law "must be constructed in the context of the by-law as a whole, and it must be given a sensible and practical meaning within that context," we disagree with the judge's interpretation that common driveways are prohibited merely because they are not explicitly allowed.

The judge also examined the by-law's legislative history in determining whether common driveways are a permissible accessory use. In its original iteration, the by-law defined accessory use and building as "[a] use of land or a structure or building customarily incident to the use of land or building to which it is an accessory." In the 1958 amended by-law, "use of land" was deleted and only "accessory building" bore a definition: "a subordinate building customarily incident to and located on the lame lot with the principal building or use." In 2009, the by-law was further amended to delete the term "customarily." The by-law remained silent as to accessory use.

Following his discussion of this legislative history, the judge returned to the interpretation of the by-law by the three members of the zoning board who voted, unsuccessfully, that a common driveway was not permitted, apparently having relied on the opinion of their town counsel that an accessory use must be on the same lot as the principal use. This position was also advanced by the plaintiffs at oral argument, who argued, by analogy, that the definition of accessory building as serving only one lot must apply to the definition to accessory use. Under such a view, a

common driveway would be prohibited as it serves multiple lots.

These arguments fail to recognize the canon of construction "inclusio unius est exclusio alterius." See *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.,* 368 Mass. 425, 432 (1975) ("[A] statutory expression of one thing is an implied exclusion of other things omitted from the statute"); *Livoli* v. *Zoning Bd. of Appeals of Southborough,* 42 Mass. App. Ct. 921, 922 (1997). The by-law's definition of accessory building as "located on the same lot" does not support the plaintiffs' argument, but rather supports the contrary: that Seekonk purposefully chose not to limit accessory use to the service of one lot.

Despite the judge's erroneous interpretation of the by-law, we still recognize that whether a common driveway is permissible under the Seekonk by-law is a question for which there is little available assistance in case law, especially given that this by-law fails to define accessory use or uses. "We derive the words' usual and accepted meanings from sources presumably known to the (by-law's) enactors, such as their use in other legal contexts and dictionary definitions." *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham,* 382 Mass. at 290, quoting from *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977). Black's Law Dictionary 1661 (9th ed. 2009) defines accessory use as "[a] use that is dependent on or pertains to a main use." Additionally, the Supreme Judicial Court has defined accessory use as "a use which is dependent on or pertains to the principal or main use." *Needham* v. *Winslow Nurseries Inc.,* 330 Mass. 95, 101 (1953). Access to residential homes through a common driveway is "dependent on or pertaining to" the principal use, i.e., a residential home. Further, "[g]enerally speaking, an accessory use needs to be both customary and incidental.[5] Courts consider the question whether a particular use is customary

---

[5]Town counsel's opinion also asserted that an accessory use must be "customarily incidental" to the principal use. Additionally, the plaintiffs, in their brief, contend that we should adopt the "customarily incidental to" definition. A use that is "customarily" incidental is one that has "commonly, habitually and by long practice been reasonably associated with the principal use." *Harvard* v. *Maxant,* 360 Mass. 432, 438-439 (1971), quoting from *Lawrence* v. *Zoning Bd. of Appeals of N. Branford,* 158 Conn. 509, 512-513 (1969). Dias argues that unlike other zoning by-laws, Seekonk's by-law does

where the zoning ordinance does not specify what *types* of uses are permitted." *Simmons* v. *Zoning Bd. of Appeals of Newburyport*, 60 Mass. App. Ct. 5, 8 (2003) (court's analysis of whether a stable and keeping three horses was an accessory use considered whether such a use was "reasonably related in function to the primary residential use, and [was] customary"). In upholding the building commissioner, the Seekonk zoning board noted that "shared driveways are in existence for access to other lots in town" and that "the shared driveway proposed by Dias in this particular instance is reasonable and adequate under the particular circumstances of this case." Given that the Seekonk by-law is permissive and we give "substantial deference" to the zoning board's decision, Dias's common driveway is a permissible accessory use.

3. *Conclusion.* Because the plaintiffs had adequate notice of Dias's request for a zoning determination and they failed to file their appeal within the statutorily required thirty days, their appeal is untimely and the zoning board was without jurisdiction to hear it. Moreover, even if their appeal was timely, the trial judge misinterpreted the Seekonk zoning by-law. For the foregoing reasons, we reverse.

*So ordered.*

---

not define accessory use with such language and that Seekonk expressly deleted "customarily" from the definition of accessory building. Nonetheless, Dias argues that a common driveway is still "customarily incidental" to the principal, namely residential, use. We agree. See *Henry* v. *Board of Appeals of Dunstable*, 418 Mass. 841, 844 (1994), quoting from 6 P.J. Rohan, Zoning and Land Use Controls § 40A.01, at 40A-3 (1994) (accessory use is one that is "necessary, expected or convenient in conjunction with the principal use of land").