In-Towne Restaurant Corporation; Worcester County National Bank, intervener, *vs.* Aetna Casualty and Surety Company
(and two companion cases).

Worcester.  December 14, 1979. — April 9, 1980.

Present: Armstrong, Perretta, & Dreben, JJ.

*Insurance,* Fraud and concealment, Fire insurance, Disclaimer of liability. *Agency,* Admission by agent. *Evidence,* Admissions and confessions. *Practice, Civil,* Instructions to jury, Discovery, New trial, Argument by counsel.

In actions brought to recover under policies of insurance after the occurrence of two fires in a night club and restaurant operated by the plaintiff, the defendants were not entitled to directed verdicts under the fraud and concealment clause of the policies on the basis of evidence that gambling occurred on the premises, of which the defendants were unaware, where there was evidence which would warrant a finding that the defendants' risk of loss had not increased by reason of the gambling activities.  [536-539]

In actions brought to recover under policies of insurance after the occurrence of two fires in a night club and restaurant operated by the plaintiff, the defendants were not entitled to directed verdicts on the basis that the plaintiff had violated the fraud and concealment clause of the policies when one of the plaintiff's principal shareholders, in a deposition, asserted his right against self-incrimination as to questions concerning the extent of gambling on the premises.  [539-542]

In actions brought to recover under policies of insurance after the occurrence of two fires in a night club and restaurant operated by the plaintiff, the judge did not err in refusing to admit in evidence a statement made by the plaintiff's bar manager to the police that a robbery which occurred prior to the fires was staged in order to collect insurance proceeds where the bar manager had no authority to make the statement.  [542]

In actions brought to recover under policies of insurance after the occurrence of two fires in a night club and restaurant operated by the plaintiff, the judge was not required to instruct the jury that, if the plaintiff's principal shareholders had not been truthful concerning circumstances pertaining to the fire, that would be circumstantial evidence which the jury might consider in determining whether the insured caused the property to be burned, where the subject of the requested instruction was adequately covered by the charge. [542-543]

A new trial of a civil action was not required by the misconduct of the plaintiff's counsel during closing argument in which he "swore on [his] license" that he would not represent anyone who came into court with a false claim where the judge immediately ruled the argument improper and instructed the jury to disregard the statement. [543-545]

CIVIL ACTIONS in the Superior Court, two commenced on December 16, 1974, and one on March 22, 1976.

The cases were tried before *Moriarty*, J., and motions for a new trial were heard by him.

*Francis J. Gallagher, Jr.*, for the defendants.

*Roger J. Brunelle* for the plaintiff.

*Daniel I. Cotton*, for Worcester County National Bank, intervener.

DREBEN, J. These actions [1] were brought to recover under policies insuring against personal property and business interruption losses after the occurrence of two fires in a night club and restaurant operated by the plaintiff (In-Towne Restaurant Corporation) in Worcester. The defendant insurance companies appeal from judgments for the plaintiff and for the intervener, entered after a jury verdict, and from the denial of the defendants' motions for a new trial.

---

[1] In-Towne Restaurant Corporation was the plaintiff in all three actions. Two of the actions were brought under policies insuring against loss to personal property; one was against Aetna Casualty and Surety Company (Aetna), and the other was against Queen Insurance Company. The Worcester County National Bank, a secured creditor of the plaintiff, intervened in these two actions. The third action was against Aetna under a policy insuring against loss for business interruption. The amount of damages to personal property was agreed upon, and the parties agreed to reserve the question of the amount of damages in the claim for business interruption. Thus all three actions involve only the question of liability.

The cases were submitted to the jury on two questions: "1) Were either of the fires that damaged or destroyed the plaintiff's property on December 19th and December 21st, 1973, caused by either or both of the plaintiff's principal stockholders, Arnold Katz and Robert Sherman or by someone acting on their behalf? 2) At the time of the said fires, had the defendants' hazard or risk of loss been increased as a result of gambling activities upon the insured's premises?" The jury answered "no" to both questions.

The defendants claim error by the trial judge: (1) in refusing to direct verdicts in their favor on the ground that the plaintiff had violated a fraud and concealment clause contained in the policies when Katz, in a deposition, asserted a right against self-incrimination under the Fifth Amendment to the Federal Constitution; (2) in refusing to admit in evidence a statement made by the bar manager of the plaintiff that a robbery, which occurred prior to the fires, was staged for the purpose of collecting insurance proceeds; and (3) in refusing to instruct the jury that it could infer that Sherman or Katz caused the property to be burned if they made untruthful statements concerning the circumstances pertaining to the fires. The defendants also allege that the judge erred in not granting them a new trial on the ground that the plaintiff's attorney in final argument violated the Canons of Ethics to the prejudice of the defendants. There was no reversible error.

1. On May 22, 1975, after the actions had commenced, the defendants took the depositions of the plaintiff's principal stockholders, Katz and Sherman. After Katz[2] had testified to the existence of card games and other gambling on the premises prior to the date of the fires, he was asked to describe the other gambling activities. On the advice of, and through counsel, Katz invoked the privilege against self-incrimination. The defendants' counsel stated he

---

[2] Although Sherman also asserted the privilege against self-incrimination during the course of his deposition, he testified at trial. The defendants do not make any claim with respect to Sherman's assertion of the privilege and limit their claim of error to Katz's assertion.

would not press the matter. The defendants did not pursue the normal remedies to force discovery, and the record shows no attempt to obtain such information or to have judicial sanctions imposed pursuant to Mass.R.Civ.P. 37, 365 Mass. 797 (1974). See *Jones* v. *B.C. Christopher & Co.*, 466 F. Supp. 213, 224-227 (D. Kan. 1979); *Borman* v. *Borman*, 378 Mass. 775, 781-782 (1979). There is also no indication that the defendants on any occasion, from the time of the deposition in May, 1975, until the trial in June, 1978, urged that it would be improper for the plaintiff to maintain its actions while its officers were invoking the Fifth Amendment. See *Kisting* v. *Westchester Fire Ins. Co.*, 290 F. Supp. 141, 149 (W.D. Wis. 1968), aff'd. 416 F.2d 967 (7th Cir. 1969); *Galante* v. *Steel City Natl. Bank*, 66 Ill. App. 3d 476, 480 (1978). Instead, as a matter of trial strategy, the defendants presented to the jury the fact that the plaintiff's stockholders had invoked the Fifth Amendment and obtained instructions that the jury could draw inferences from that fact. See *Andrews* v. *Frye*, 104 Mass. 234, 236 (1870); *Kaye* v. *Newhall*, 356 Mass. 300, 305-306 (1969).

The defendants also filed motions for directed verdicts on the last day of trial, prior to the submission of the cases to the jury. The reasons given in the motions were that Katz and Sherman had invoked the Fifth Amendment when asked about gambling on the premises, that such claim of privilege constituted concealment under the fraud and concealment clause of the policies,[3] and that such concealment was of material facts pertaining to an increase in a hazard within the control or knowledge of the insured.

---

[3] The clause is prescribed by G. L. c. 175, § 99, and provides, inter alia: "This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

The policies also provided, as also prescribed by G. L. c. 175, § 99: "Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) While the hazard is increased by any means within the control or knowledge of the insured; . . ."

In claiming that the denial of their motions was error, the defendants correctly recognized that the fraud and concealment clause requires that there be concealment of a "material fact or circumstance" to render the policy void. *Daniels* v. *Hudson River Fire Ins. Co.*, 12 Cush. 416, 425 (1853). *Employers' Liab. Assur. Corp.* v. *Vella*, 366 Mass. 651, 655 (1975). *Firemen's Ins. Co.* v. *Smith*, 180 F. 2d 371 (8th Cir.), cert. denied, 339 U.S. 980 (1950). See G. L. c. 175, § 186. A material fact is one "the knowledge or ignorance of which would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium. If the fact so untruly stated or purposely suppressed is not of this character, it is not a 'misrepresentation' or 'concealment' within this clause . . .." *Daniels*, 12 Cush. at 425.

In order to support their claim that a material fact was concealed, the defendants make two arguments. The first, which does not strictly rest on the fact that the stockholders invoked the Fifth Amendment to the Federal Constitution, is based on the claim that gambling increased the hazard. They argue that had they known that gambling occurred on the premises, they would not have written the risk, or, if they had issued the policies, they would have cancelled them once they had discovered the gambling.

The defendants were not entitled to directed verdicts on this argument. It is a question for the jury or other trier of fact to determine whether a material fact has been concealed. *Campbell* v. *New England Mut. Life Ins. Co.*, 98 Mass. 381, 395-396 (1867). See *Employers' Liab. Assur. Corp.* v. *Vella*, 366 Mass. at 655-656. There was evidence at trial from which the jury could find that the defendants' risk of loss had not increased by reason of the gambling activities. The defendants' own witness, the person in charge of the underwriting department at Aetna, testified on cross-examination that infrequent, friendly card games among persons playing for small stakes who could afford to lose, "would not be a factor" in cancelling or procuring insur-

ance.[4] Taking the evidence most favorable to the plaintiff, *Boyle* v. *Wenk*, 378 Mass. 592, 593 (1979), it cannot be said that directed verdicts should have been granted. Moreover, a court cannot take judicial notice, or hold, as a matter of law, that gambling increases the risk. *Firemen's Ins. Co.* v. *Smith*, 180 F.2d at 376. See *Security Ins. Co.* v. *Dazey*, 78 F.2d 537, 538 (1935). See also *St. Paul Fire & Marine Ins. Co.* v. *Bachmann*, 285 U.S. 112, 118 (1932).

The second argument of the defendants does rest on the invocation of the Fifth Amendment by the stockholders of the plaintiff. The defendants argue that the fraud and concealment clause, see note 3, *supra*, places a duty on the insured to disclose information material to any defense and that Katz's assertion of the Fifth Amendment violated the clause by precluding the defendants from developing such defenses, particularly the extent of gambling. This contention is based on a concealment which occurred in May, 1975, at the time of the depositions, more than five months after the plaintiff had filed its first action. There is a split of authority as to whether concealment or fraud after denial of liability and initiation of suit can vitiate the policy, the majority rule appearing to be that the clause, despite language referring to time periods before and after a loss, cannot give the insurer additional rights after suit is filed.[5]

---

[4] There was also testimony by Sherman that friendly card games and occasional betting between patrons watching sports events on television was the extent of the gambling which took place on the premises.

[5] The reasoning of the majority is that, once settlement fails and suit is brought, the parties are no longer dealing on the nonadversary level required by the fraud and concealment clause. The rights of the parties are fixed at the time the insurer forces the insured to bring suit, and it is assumed that the insurer then has sound reason under the policy to deny liability. "To permit the insurer to await the testimony at trial to create a further ground for escape from its contractual obligation is inconsistent with the function the trial normally serves. It is at the trial that the insurer must display, not manufacture, its case." *American Paint Serv.* v. *Home Ins. Co.*, 246 F.2d 91, 93-94 (3d Cir. 1957). See also, e.g., *Vernon* v. *Aetna Ins. Co.*, 301 F.2d 86, 90 (5th Cir.), cert. denied, 371 U.S. 819 (1962); *Mercantile Trust Co.* v. *New York Underwriter's Ins. Co.*, 376 F.2d 502, 504 n.2 (7th Cir. 1967). But see, e.g. *Follett* v. *Standard Fire*

We need not, however, decide whether the majority or minority rule should apply. Even if it be assumed that the assertion of the Fifth Amendment constituted wilful concealment and that such concealment at the time of the deposition was within the statutory policy provisions, the defendants have not met the requirement, discussed earlier in this opinion, that there be a finding by a trier of fact that a material fact was misrepresented or concealed. *Campbell* v. *New England Mut. Life Ins. Co.*, 98 Mass. at 396. *Employers' Liab. Assur. Corp.* v. *Vella*, 366 Mass. at 655-656. Under the defendants' construction of the clause, the insurer could show concealment as a matter of law by merely establishing that a material fact or defense *might* exist and that the insured refused to answer questions relating thereto. We do not think the fraud and concealment clause casts such a wide net.

We are buttressed in our conclusion by the provisions of G. L. c. 175, § 99, which prescribe a statutory form for fire insurance policies. By St. 1951, c. 478, Massachusetts adopted a statutory policy based upon what is known in the insurance field as the "standard policy," a form originally adopted in New York in 1943. 1943 N.Y. Laws, c. 671, § 6. Many provisions of the Massachusetts statutory policy, including the fraud and concealment clause, are identical[6] to the "standard policy," but although the latter contains a provision requiring the insured to submit to examinations under oath, the Massachusetts policy does not. In the circumstances of the adoption of the Massachusetts statutory policy, see note 6, *supra*, we cannot consider the omission of

---

*Ins. Co.*, 77 N.H. 457 (1915); *Lomartira* v. *American Auto. Ins. Co.*, 371 F.2d 550, 553-554 (2d Cir. 1967).

[6] Nine of the twenty paragraphs of the Massachusetts statutory policy, as contained in G. L. c. 175, § 99, Twelfth, are identical to the New York standard policy. Six paragraphs are similar. The House report recommending the bill which was adopted as St. 1951, c. 478, indicates that the New York standard form was before the committee. See Report of the Joint Standing Committee on Insurance, 1951 House Doc. No. 2430, at 11; see also p. 4.

this clause to be accidental.[7] Compare *Kneeland* v. *Emerton*, 280 Mass. 371, 379-380 (1932). We also note that G. L. c. 175, § 99, not only mandates the form for fire insurance policies, but prohibits any deviation from that form which results in a cancellation of the policy.

The examination-under-oath clause is apparently permitted in most States[8] and specifically covers the subject matter of questioning the insured. See, e.g., *Kisting* v. *Westchester Fire Ins. Co.*, 290 F. Supp. 141 (W.D. Wis. 1968), aff'd, 416 F.2d 967 (7th Cir. 1969); *Hickman* v. *London Assur. Corp.*, 184 Cal. 524 (1920). Even where the policy contains such a clause, a number of courts have held that a refusal to answer by reason of a claim of the Fifth Amendment does not forfeit or render the policy void, but merely postpones the right to sue. See, e.g., *Agricultural Ins. Co.* v. *Iglehart*, 386 P.2d 145, 147-148 (Okla. 1963); *Knight* v. *Firemen's Ins. Co.*, 227 Mo. App. 426, 432 (1932). Contra, see *Restina* v. *Aetna Cas. & Sur. Co.*, 61 Misc. 2d 574, 578 (N.Y. Sup. Ct. 1969).[9]

In light of the "standard policy" and also the general insurance framework of which G. L. c. 175, § 99, is a part, we conclude that the fraud and concealment clause does not require cancellation of the policy by reason of the insured's failure to answer questions concerning possible defenses. We summarize the considerations we find persuasive in reaching this conclusion. (1) Although the "standard policy" of the fire insurance industry contains a fraud and conceal-

---

[7] See 5A Appleman, Insurance Law §§ 3549, 3550 (1970), and 1979 supplement, n.75, for possible policy reasons supporting the omission of such a clause.

[8] According to a publication of the American Bar Association, Committee on Property Insurance Law, Property Insurance Annotations Fire and Extended Coverages (1977 ed.) at 7, all but four States (California, Minnesota, Massachusetts and Texas) permit the use of the "standard policy." Section 18 of the standard policy contains the examination-under-oath-clause.

[9] For a collection of authorities on this clause see 14 Couch, Insurance §§ 49.731, 49.732 (2d ed. 1965). See generally 5A Appleman, Insurance Law § 3549 (1970).

ment clause, questioning of the insured is covered by a specific clause in the "standard policy"; (2) that specific clause was omitted from the Massachusetts statutory policy; (3) the Massachusetts statute expressly prohibits the inclusion of any additional clause which relates to cancellation of a policy; and (4) no case has been cited to us which provides for cancellation of the policy based on the fraud and concealment clause for failure to answer questions posed in litigation. For the foregoing reasons and because the defendants have not shown concealment of a material fact as a matter of law, the judge did not err in denying the defendants' motions for directed verdicts.

2. The defendants claim that the judge committed error in not allowing a police officer to testify that the plaintiff's bar manager had told him that a robbery, which had occurred on the plaintiff's property prior to the fires, had been a "phony" and staged in order to collect insurance. In view of the evidence relating to the bar manager's authority to make the statement to the police, the finding of the trial judge that the bar manager had no such authority was proper. *Dexter* v. *Thayer*, 189 Mass. 114, 115 (1905). Under the traditional rules of evidence still applicable to these actions, the lack of authority to make such a statement precludes its admission. *Bristol Wholesale Grocery Co.* v. *Municipal Lighting Plan Commn.*, 347 Mass. 668, 671 (1964). *Simonoko* v. *Stop & Shop Inc.*, 376 Mass. 929 (1978). Compare Fed.R.Evid. 801(d)2(D) and proposed Mass.R. Evid. 801(d)2(D). We do not reach the question whether the statement would be inadmissible for other reasons. See *Commonwealth* v. *Campbell*, 371 Mass. 40, 42-44 (1976). 2 Wigmore, Evidence § 371 (Chadbourn rev. 1979).

3. The defendants allege error in that the trial judge did not give the following instructions: "If you find that Sherman or Katz has not been truthful concerning circumstances pertaining to a fire, this fact, if found by you, would be circumstantial evidence which you may consider in determining whether the insured caused the property to be burned." The examples of evidence of untruthfulness recit-

ed by the defendants in support of the instruction related primarily to the stockholders' views as to the financial condition of their business. Even if such statements are regarded as untruths concerning circumstances pertaining to a fire, it is a matter of discretion for the trial judge "as to how far he will discuss different phases of the testimony upon a particular subject and give specific instructions, each founded upon only a part of the testimony bearing upon the subject." *Buckley* v. *Frankel*, 262 Mass. 13, 15-16 (1928), quoting from *Hicks* v. *New York, N.H. & H.R.R.*, 164 Mass. 424, 428 (1895).

Here, the trial judge instructed the jury fully as to the circumstantial evidence from which they could find arson. He charged that they could consider the motives of the owners as inferred from the evidence as to the financial situation of the principals, and he also charged that they could take into account, among other circumstances, the financial benefits accruing to various individuals from a fire. We consider the subject of the requested instruction was adequately covered by the charge. *Squires* v. *Fraska*, 301 Mass. 474, 476 (1938).

4. The defendants also allege as error the denial of their motions for a new trial based on improper argument of the plaintiff's trial counsel. During closing argument, the plaintiff's counsel "swore on [his] license" that he would not represent anyone who came into court with a false claim.[10] After the defendants objected, the judge ruled that the argument was improper and immediately instructed the jury to disregard the statement.

---

[10] The statement of trial counsel (who is not counsel on appeal) was presumably made in reference to Sherman's deposition, see note 2, *supra*, and was as follows: "These people I represent made a fine representation. When asked about the card games, Sherman says, yes, there were card games. And when he is asked a lot more, I say that is enough, 'Don't answer.' I have reasons in my own mind, and it is not to hide something. But I swear to you on my license and on my oath I would not come to Court in this action and represent somebody who I have any reason to believe that this is a false claim."

Trial counsel's statement was a clear violation of S.J.C. Rule 3:22, DR 7-106(C), 359 Mass. 821-822 (1971), which states: "In appearing in his professional capacity before a tribunal, a lawyer shall not: . . . (3) Assert his personal knowledge of the facts in issue, except when testifying as a witness. (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

The misconduct of counsel does not necessarily require a new trial. In *Fialkow* v. *DeVoe Motors, Inc.*, 359 Mass. 569, 572 (1971), the Supreme Judicial Court said that the trial judge "is in the best position to decide what corrective measures, if any, are required. . . . He has discretion to decide whether a mistrial should be declared or whether instructions should be given to the jury. . . . In short, he has discretion to decide whether any action is required and, if it is, what it should be and when it should be taken. This court will not intervene in such a case where no abuse of such discretion is shown."

We find no such abuse here either at trial or in the denial of the motions for a new trial. The judge immediately took corrective action and instructed the jury to disregard the statement. It is expected that the jury will follow such instructions. *Luz* v. *Stop & Shop Inc.*, 348 Mass. 198, 207-208 (1964). The defendants did not seek, either before or after the judge's charge, a mistrial or any additional or different instructions. *Fialkow*, 359 Mass. at 572. *Warren* v. *Edgeco, Inc.*, 8 Mass. App. Ct. 171, 178 (1979). Only after an unfavorable verdict, when the judge could no longer take any other less drastic action, did the defendants urge that the judge grant a new trial. The applicable rule in these circumstances is analogous to the "fundamental rule of practice" that errors should be timely brought to the attention of the judge in order to give him an opportunity to rectify the error, if any, see *Commonwealth* v. *McDuffee*,

379 Mass. 353, 357 (1979). A motion for a new trial is not to be used as a "supplement to appellate opportunities" to raise issues which could have been but were not raised at the original trial and, in such circumstances, the power to grant a new trial should be sparingly exercised. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 449 (1980). The trial judge did not abuse his discretion in denying the motion for a new trial or in concluding "that the remedial measures which he employed were sufficiently curative." *Warren* v. *Edgeco, Inc.*, 8 Mass. App. Ct. at 177-178.

*Judgments affirmed.*