725 F.2d 1324
 ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, Cross-Appellant,
v.
ADANA MORTGAGE BANKERS, INC., Robert D. Nimmo, in his
official capacity as Administrator of Veterans
Affairs, Defendants-Appellants, Cross-Appellees.
ALLSTATE INSURANCE COMPANY, Plaintiff,
v.
ADANA MORTGAGE BANKERS, INC., Defendant-Appellee,
and
Robert P. Nimmo, Defendant-Appellant.
 Nos. 82-8652, 83-8128.
 United States Court of Appeals,
Eleventh Circuit.
 March 2, 1984.
 
 1
 Carol V. Clark, Atlanta, Ga., for Adana Mortg. Bankers, Inc.
 
 
 2
 Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for Nimmo.
 
 
 3
 Dennis J. Webb, Robert C. Semler, Diane Q. House, Atlanta, Ga., for Allstate Ins. Co.
 
 
 4
 Appeals from the United States District Court for the Northern District of Georgia.
 
 
 5
 Before ANDERSON and CLARK, Circuit Judges, and DUMBAULD*, District Judge.
 
 DUMBAULD, District Judge:
 
 6
 These consolidated cases invoke the respective rights of the insurance company (Allstate), the lender (Adana), and the Veterans Administration[1] as the result of a fire loss suffered by a residential property the mortgage on which was guaranteed by VA. In No. 82-8652 (action by Allstate for declaratory judgment) the District Court granted Allstate's motion for summary judgment against VA and the lender. In No. 83-8128 the District Court denied VA's alternative claim against Adana in case the insurance company's rejection of VA's claim was sustained. VA contended that under applicable regulations the lender was obliged to obtain or maintain insurance for the protection of VA as a condition of conveying foreclosed property to VA when collecting from VA on its guarantee of the mortgage. Interlocutory appeal under 28 U.S.C. 1292(b) was allowed in No. 83-8128.
 
 
 7
 We conclude that, under a proper interpretation of the insurance policy issued by Allstate, VA is entitled to recover as successor-assignee of the mortgage lender, and therefore the District Court's judgment in No. 82-8652 is reversed in part[2], and No. 83-8128 is thereby rendered moot.
 
 
 8
 When Adana became the lender and mortgagee on the residential property where the fire later occurred, in accordance with its standard procedure the mortgagee clause in the applicable homeowner's policy was changed to read "Adana Mortgage Bankers, Inc., and/or its successors and assigns ATIMA [as their interests may appear]." When default in mortgage payments occurred, Adana foreclosed and became owner of the property. On the following day (July 2, 1980) Adana conveyed the property to the VA.
 
 
 9
 On July 21, 1980, Adana executed a cancellation notice on the policy. It is unknown when this notice was mailed. It was received by Allstate on July 28, 1980. The fire occurred on July 22, 1980, at 1:33 A.M. On August 6, 1980, Adana received from Allstate a cancellation notice effective August 13, 1980. Allstate was notified of the fire by the occupant of the property on July 22, 1980, and the VA submitted a proof of loss form dated September 12, 1980.
 
 
 10
 VA regulations forbid cancellation by a lender of any insurance in force when it acquires the foreclosed property, but requires an endorsement naming the VA as assured.
 
 38 CFR 36.4320(h)(2) reads:
 
 11
 The holder shall not cancel any insurance in force when he acquired the property. Coincident with the notice of election to convey or transfer the property to the Administrator or with the acquisition of the property by the holder, following such notice, whichever is later, the holder shall obtain endorsements on all such insurance policies naming the Administrator as an assured, as his interest may appear. Such insurance policies shall be forwarded to the Administrator at the time of the conveyance or transfer of the property to the Administrator or as soon thereafter as feasible.
 
 
 12
 This provision was upheld in another connection in U.S. v. Shimer, 367 U.S. 374, 379, 81 S.Ct. 1554, 1558, 6 L.Ed.2d 908 (1961). It is reasonable that a lender seeking the benefit of "bail out" by the government of a "sour" loan should transfer the property to the government in no worse condition than it was in the hands of the lender. Of course the lender can not be expected to pay insurance premiums indefinitely after the transfer, but the VA should be given a reasonable opportunity to continue the existing policy or provide such other insurance as it deems appropriate.
 
 
 13
 Adana contends that it could rely on a telephone conversation with a VA employee as an authorization binding on the government permitting cancellation of the policy at the time of transfer of the property. But it is clear that no employee at the VA office actually had any authority to grant a dispensation from the requirements set forth in the valid VA regulations.
 
 
 14
 Persons dealing with the government can not rely upon conversations with officials, Augusta Aviation Inc. v. U.S., 671 F.2d 445, 449 (C.A.11, 1982); Hicks v. Harris, 606 F.2d 65, 68-69 (C.A.5, 1979); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). In a familiar passage Justice Holmes long ago pointed out that "Men must turn square corners when dealing with the Government." Rock Island, Ark. & La. R.R. Co. v. U.S., 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). And recently the Supreme Court made plain in Mendoza that doctrines of "estoppel" cannot be mechanically invoked against the government, without appropriate consideration of important policy questions. U.S. v. Mendoza, --- U.S. ----, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).
 
 
 15
 Accordingly, we are persuaded that it was the duty of Adana to maintain insurance protection for the benefit of the VA. Did it do so?
 
 
 16
 The above-quoted mortgagee clause covering Adana's "successors and assigns ATIMA" seems sufficiently broad to include the VA as a beneficiary, if the policy were still in force at the time of the fire.
 
 
 17
 The District Court was correct in concluding that the policy had not been cancelled before the fire. Cancellation by the unilateral act of the beneficiary, not communicated to the insurance company, does not seem a tenable position in the case at bar (though perhaps there might be some conceivable cases, though none come readily to mind, where public policy might dictate such a result for the protection of the interests of policy holders under an agreement which is ordinarily a contract of "adhesion" formulated by the insurance company and likely to favor its own interests). In any event it does not lie in the mouth of Allstate to espouse a cancellation date earlier than August 13, 1980, the date specified in Allstate's own notice of cancellation sent to Adana and received by Adana on August 6, 1980.
 
 
 18
 Finally, Allstate can not rely on the defense that Adana's becoming record owner of the property (by virtue of foreclosure) rather than mortgagee precludes recovery under the terms of the policy.
 
 
 19
 Whether Allstate's "plain language" policy should be denominated a "New York standard clause" or something else is immaterial. The wording of the policy clearly recognizes the existence of separate, independent rights in the mortgagee, which are not derivative from or dependent upon the rights of the mortgagor insured.
 
 
 20
 Allstate relies on terms of the policy which provide that the insurer will "protect the mortgagee's interest in an insured building in the case of breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions" and that the mortgagee will notify the insurance company "of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge."
 
 
 21
 Allstate contends that when Adana became record owner of the property there was a "change of ownership" and a "foreclosure" of which Adana, being a party to the transaction, necessarily had knowledge, and hence was excluded from coverage by the language of the policy. It is much more reasonable to interpret these policy provisions as referring to the actions of third parties (such as a sale by the mortgagor, or foreclosure by the holder of a junior mortgage) rather than to the ordinary change of status when a mortgagee forecloses on his own mortgage.
 
 
 22
 It seems clear, then, that Adana is entitled to recover from Allstate for the use of the VA, and that the District Court's grant of summary judgment in favor of Allstate in No. 82-8652 must be REVERSED, and that accordingly the appeal in No. 83-8128 is DISMISSED as moot. No. 82-8652 is REMANDED for further proceedings in accordance with this opinion.
 
 
 
 *
 Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Technically the proper federal defendant is the Administrator of Federal Affairs, as provided by the District Court's order of April 1, 1982
 
 
 [2]
 We affirm the District Court on Allstate's cross-appeal contending that the District Court erred in holding that the policy had not been validly cancelled before the fire