IDEAL FINANCIAL SERVICES, INC. *vs.* MICHAEL ZICHELLE
& others.[1]

No. 99-P-368.

Worcester. November 14, 2000. - July 11, 2001.

Present: PORADA, LENK, & DUFFLY, JJ.

*Insurance,* Fire, Mortgagee's interest. *Limitations, Statute of.*

Discussion of the protection for mortgagees under the statutory mortgage
   clause in a Massachusetts fire insurance policy. [53-57]
Where, at the time of a fire that badly damaged an insured residential property,
   the "mortgagee" under a standard mortgage clause in a Massachusetts fire
   insurance policy had previously taken full title to the insured property by
   foreclosure deed, the "mortgagee" was the "owner" at the time of the loss
   and could no longer recover as "mortgagee" under the policy. [57-58, 66-
   67]
Discussion of Massachusetts cases involving the mortgage clause in a standard
   Massachusetts fire insurance policy. [58-62]
Discussion of the mortgage clause in a standard New York fire insurance
   policy. [62-66]
Statement of the comparison of the New York and Massachusetts statutory
   standard mortgage clauses. [66]
Where the mortgagors under a standard mortgage clause in a Massachusetts
   fire insurance policy failed to pursue their personal property claim against
   an insurer within the two-year limitations period set forth in G. L. c. 175,
   § 9, their claim was time barred and, consequently, a "mortgagee," which
   had obtained a deficiency judgment against the mortgagors, could not
   reach and apply the obligation it asserted that the insurer had to the
   mortgagors under the policy. [67]

CIVIL ACTION commenced in the Superior Court Department on
August 15, 1996.

Motions for summary judgment were heard by *Francis R.
Fecteau,* J., and entry of separate and final judgment was
ordered by *Peter A. Velis,* J.

[1]Linda Zichelle and Hingham Mutual Fire Insurance Company. The claims
against Michael Zichelle were stayed by the filing of a suggestion of
bankruptcy; Linda Zichelle defaulted.

*Joseph G. Blute* for the plaintiff.

*Ethan Warren* for Hingham Mutual Fire Insurance Company.

LENK, J. The question presented is whether, under a standard mortgage clause in a Massachusetts fire insurance policy, a mortgagee's coverage under the policy will survive a transfer of the full title to the mortgagee at foreclosure. Two months after foreclosure and purchase of a residential property by the plaintiff, Ideal Financial Services (Ideal), on which Ideal had held a first mortgage, the house was badly damaged by fire. Ideal was denied coverage by the defendant insurer, Hingham Mutual Fire Insurance Company (Hingham), under a fire insurance policy issued to the former mortgagor-owner that named Ideal as mortgagee. Ideal brought suit and, following cross motions for summary judgment, the judge granted summary judgment to Hingham.[2] This appeal followed.

I. *Background.* The undisputed facts are these. On July 18, 1990, Linda and Michael Zichelle granted a mortgage on their house to Ideal for $170,000. Ideal is a Massachusetts corporation in the lending and financial services business. The Zichelles obtained from Hingham a homeowner's policy providing property and fire insurance coverage insuring the Zichelles as owners and Ideal as the mortgagee. Hingham is a mutual insurance company organized under the laws of and located in Massachusetts. In late 1994, the Zichelles defaulted on the mortgage and, at the foreclosure sale on December 1, 1994, Ideal purchased the property for $157,000; on December 8, 1994, Ideal recorded a foreclosure deed. Ideal preserved its right to pursue a claim against the Zichelles for a deficiency judgment, which it ultimately obtained in the amount of $50,286.37 on May 7, 1997, and which apparently remains unsatisfied.

Two months after Ideal had become the owner of the house — where the Zichelles were still living pending their eviction — and shortly before Ideal was to sell the property to a third

---

[2]The complaint was in seven counts. Counts I-III were against the Zichelles, and are not the subject of this appeal. The other counts were as follows: count IV — reach and apply against the Zichelles and Hingham; count V — declaratory judgment against Hingham; count VI — breach of contract against Hingham; and count VII — G. L. c. 93A against Hingham.

party, a fire severely damaged the house on February 17, 1995. At the time of the fire, the insurance policy was in effect and the $525 premium had been paid by the Zichelles. Neither the Zichelles nor Ideal had notified Hingham of the foreclosure sale or of Ideal's purchase of the property, a matter of which Hingham first learned following the claims made in connection with the fire. Ideal timely claimed coverage under the policy for damages caused by the fire, which claim Hingham denied on April 27, 1995, asserting that, at the time of the fire, Ideal was no longer the mortgagee but instead the owner of record of the property, that the change of ownership had not been reported to Hingham, that Hingham had not assented to an assignment of or endorsement for that change of ownership, and that Ideal accordingly had no right to recover as mortgagee under the mortgage clause of the policy.

After the fire, the Zichelles also submitted a claim to Hingham seeking recovery under the personal property sections of the policy for damage to their personal property. The Zichelles and Hingham signed a "non-waiver agreement" preserving their rights, their adjustors disagreed as to the value of the loss,[3] and it appears that, after creditors commenced suit against the Zichelles, the Zichelles abandoned their claim, neither requesting reference to a board of referees, nor submitting to a requested examination under oath. The Zichelles did not bring suit against Hingham within the limitations period of two years from the fire loss.

In August of 1996, Ideal brought suit in Superior Court against the Zichelles and Hingham, seeking among other things, (a) to enforce its separate and independent contractual right to coverage under the mortgage clause of the policy, and (b) to establish the Zichelles' personal property damage claim against Hingham, and to reach and apply that recovery to the Zichelles' outstanding indebtedness to Ideal. Ideal and Hingham filed cross motions for summary judgment; the judge allowed Hingham's and denied Ideal's motion. The judge ruled, as to Ideal's

---

[3]The Zichelles' adjustor valued their loss at $146,395; Hingham's adjustor valued the loss at $53,753.70.

claim under the policy, that because Ideal had taken a deed in foreclosure before the fire, it was the "owner" at the time of the loss and could no longer recover as "mortgagee" under the policy and that, in any event, Ideal was also barred from recovery because it had not notified Hingham as required by the policy of the "change of ownership" after it obtained the deed in foreclosure. The judge ruled, as to Ideal's reach and apply claim, that since the Zichelles had not brought suit within the two-year limitations period, their claim was time barred and there was accordingly no claim for Ideal to reach and apply.

On appeal, Ideal maintains that under a standard mortgage clause in a fire insurance policy, the mortgagee's purchase of the property at foreclosure, while preserving its right to a deficiency judgment on the debt, does not extinguish coverage and is not a "change of ownership" requiring notice within the meaning of the clause. Further, it claims that Hingham cannot defend Ideal's reach and apply claim by raising the Zichelles' conduct in allowing the limitations period to lapse following the commencement of Ideal's reach and apply claim. We consider each in turn.

II. *Discussion.* A. *Protection for mortgagees under the standard Massachusetts mortgage clause.* At the outset, it is well to remember that the policy provisions at issue are mandated by statute, G. L. c. 175, § 99, Twelfth. Indeed, legislation governing the standard form of fire insurance policy in Massachusetts was first enacted in 1873, and became mandatory in 1881, this apparently in the aftermath of the great Boston fire, when it became evident that uniformity in policy provisions was lacking but desirable.[4] Other States followed suit, albeit mandating somewhat different statutory policies. The modern Massachusetts statute prescribing a statutory form for insurance policies came into existence in 1951, when Massachusetts "adopted a statutory policy based upon what is known in the insurance field as the 'standard policy,' a form originally adopted in New York in 1943." *In-Towne Restaurant Corp.* v. *Aetna Cas. & Sur. Co.*, 9 Mass. App. Ct. 534, 540

---

[4]See Report of the Joint Standing Committee on Insurance, 1951 House Doc. No. 2430, at 9-11.

(1980).[5] While many provisions of the Massachusetts statutory policy are identical to the New York "standard policy," some are not. *Id.* at 540 & n.6. The mortgage clause at issue here is one of the clauses that is not identical to the New York "standard policy" counterpart, and this divergence is at the heart of the problem before us.

The Massachusetts statutory policy, as pertinent to this analysis, reads as follows:

> "No company shall issue policies or contracts which . . . insure against loss or damage by fire . . . to property or interests in the commonwealth, other than those of the standard forms herein set forth, . . . except as follows:

> . . .

> "Ninth, A company may write upon the margin or across the face of a policy, or write . . . upon separate slips or riders to be attached thereto, provisions adding to or modifying those contained in the standard form, and all such slips, riders and provisions shall be signed by the officers or agents of the company so using them. *Nothing herein contained shall authorize any addition to or modification of any of the provisions of said standard form relative to the rights of a mortgagee*, a cancellation of the policy, a reference of the amount of a loss to three referees or the limitation of actions or suits.

> . . .

> "Twelfth, Said standard form of policy shall be plainly printed . . . and shall be substantively as follows:

> . . .

> "In consideration of the provisions and stipulations

---

[5]See 3 Freedman, Richards on the Law of Insurance § 497, at 1587-1594 (5th ed. 1952). Richards notes that, as of 1968, the New York Standard Fire Policy had been adopted in forty-six States. He also states that "[i]n June 1951 Massachusetts abandoned its original standard policy and adopted the 1943 New York Standard policy, although with changes in clauses relating to mortgage provisions, appraisal clause, cancellation, and loss requirements." *Id.* at 118 (Supp. 1968).

herein or added hereto and of _____ dollars premium this company, for the term of _____ . . . at location of property involved, to an amount not exceeding _____ dollars, does insure _____ and legal representatives, to the extent of the actual cash value of the property at the time of loss, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all loss by fire, lightning and by removal from premises endangered by the perils insured against in this policy . . . .

"Assignment of this policy shall not be valid except with the written consent of this company.

. . .

*"Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate*; provided, that the mortgagee shall on demand pay according to the established scale of rate for any increase of risk not paid for by the insured; and whenever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company interested, upon such payment, the said mortgage together with the note and debt thereby secured." (Emphasis added.)

G. L. c. 175, § 99, as amended through St. 1985, c. 137, § 2.

The Hingham policy at issue is an "easy read" standard form policy issued in accordance with G. L. c. 175, § 99, Twelfth, and provisions of the policy pertinent to this dispute appear in a section entitled "Mortgage Clause," which reads as follows:

"a. If a mortgagee is named on the Declarations, a loss

payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial does not apply to a valid claim of the mortgagee, if the mortgagee has:

1) notified us of change in ownership, occupancy or substantial change in risk of which the mortgagee became aware;

2) paid the premium due under this policy on demand if an insured neglected to pay the premium; and

3) submitted a signed, sworn proof of loss within 60 days after receiving notice from us if an insured has failed to do so.

"All terms of this policy apply to the mortgagee unless changed by this clause.

"b. If we cancel this policy, we will notify the mortgagee at least 10 days before the date cancellation takes effect.

"c. If we pay the mortgagee for a loss and deny payment to you:

1) we are subrogated, up to the amount we paid for the loss, to all the rights of the mortgagee granted under the mortgage on the property; or

2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus the accrued interest. In this event, we shall receive full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

"Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim."

If unambiguous, these provisions "are to be construed given their plain meaning," bearing in mind that when "considering the application of the provisions to this case . . . the relevant

policy language is the same, or substantially the same, as mandated by the Legislature in G. L. c. 175, § 99, Twelfth." *The Money Store/Mass., Inc.* v. *Hingham Mut. Fire Ins. Co.*, 430 Mass. 298, 300-301 (1999).

. The mortgage clause, read in the light of the statute and the cases construing it, is straightforward in creating separate obligations that "distinguish the contract of insurance between an insurer and an owner from the contract of insurance between an insurer and a mortgagee." *Pierce* v. *Sentry Ins.*, 12 Mass. App. Ct. 124, 126 (1981). There are two contracts of insurance here: one between Hingham and the mortgagor Zichelles, and one between Hingham and the mortgagee Ideal, and the two may "differ in certain respects." See *J. & T. Enterprises, Inc.* v. *Liberty Mut. Ins. Co.*, 384 Mass. 586, 587 (1981). Under the mortgage clause, "courts have held that the agreement of the company with the mortgagee being separate and divisible from that with the mortgagor, the mortgagee cannot be affected by any act or default of the mortgagor, and any breach of the policy terms and conditions committed by the mortgagor is no defense to an action by the mortgagee." 5A Appleman, Insurance Law § 3401, at 289-290 (rev. ed. 1970). There can be no doubt that the mortgage clause is intended to protect the mortgagee from an insurer's avoidance of the policy which would otherwise result from the acts or defaults by the insured or by anyone other than the mortgagee or its agents.[6]

B. *Coverage by the subject policy for Ideal upon its change in status from mortgagee to owner.* Hingham, however, does not seek to avoid the policy as to Ideal based on the acts or defaults by the insured or anyone other than Ideal. Hingham does not dispute that a mortgagee is protected under a separate and non-derivative insurance of the mortgagee's interest.[7] Hingham's point is rather that, by virtue of Ideal's own acts of

[6] See Report of the Joint Standing Committee on Insurance, 1951 House Doc. No. 2430, at 10.

[7] Ideal contends that an understanding of the differences between the "open loss payable" and New York "standard mortgage" clause is critical to a resolution of the issues in the case. The open loss payable mortgage clause makes the mortgagee "a mere appointee of policy proceeds," and its right of recovery, being derivative of the mortgagor's right, "can be defeated by the mortgagor's acts or neglects." Under the standard mortgage clause, in contrast, the mortgagee enjoys a separate contract of insurance with the insurer, its

foreclosing and taking ownership of the property by foreclosure deed, it was not a mortgagee at the time of the fire. Hingham contends that, at the time of the fire, Ideal's insurable interest was not that of "mortgagee," but that of "owner" and Ideal was not insured in that capacity. How the term "mortgagee," as used in the mortgage clause, is to be understood is thus the central inquiry.

(1) *Massachusetts cases.* We are aware of no Massachusetts decision squarely on point as to whether a "mortgagee" for the purpose of the mortgage clause encompasses one who, at the time of the fire, had previously taken full title to the insured property by foreclosure deed. Several cases involve a critically different fact pattern: the fire occurred before foreclosure by the mortgagee. In those cases, the subsequent foreclosure and purchase of the property by the mortgagee through foreclosure deed did not affect the mortgagee's right, fixed at the time of the fire, to collect from the insurer. See *Ben-Morris Co.* v. *Hanover Ins. Co.*, 3 Mass. App. Ct. 779 (1975); *Lembo* v. *Parks*, 6 Mass. App. Ct. 850 (1978); *Guempel* v. *Great Am. Ins. Co.*, 11 Mass. App. Ct. 845 (1981). In *Ben-Morris*, the mortgagee's right to insurance proceeds in such circumstances was held to be limited to the amount due it on the mortgage debt, even if the debt were reduced subsequent to the loss. In *Lembo*, the mortgagee who bought in at foreclosure for the full amount owed in mortgage debt was ineligible for insurance proceeds since he was insured only to the extent of the mortgage debt and this had been extinguished at foreclosure. In *Guempel*, the

rights are not derivative of the mortgagor's, and the mortgagor's acts or neglects are without impact on the mortgagee-insurer contract. See Steinmetz, Goldman, & Sullivan, The Standard Mortgage Clause in Property Insurance Policies, 33 Tort & Ins. L.J. 81, 81-85 (1997). While we appreciate the considerable difference between the two types of mortgage clauses and acknowledge that the open loss payable clause was often employed before the standard mortgage clause came into widespread use, we are unpersuaded that the resolution of the issue before us turns on the difference between them. As a practical matter, the distinction has declined in importance since, in recent times, "mortgagees are almost universally insured under standard mortgage clauses, not loss payable clauses." Lev, Mortgagees and Insurers: The Legal Nuts and Bolts of Their Relationship, 662 Ins. L.J. 168, 169-170 (1978). There is no dispute that the Massachusetts statutory policy mortgage clause and that found in the subject Hingham policy are standard mortgage clauses.

fire took place after the foreclosure sale but before the deed passed to the mortgagee purchaser. This last fact proved critical since the mortgagee was seen to remain such, and remain protected as a mortgagee by the insurance policy, until it took the deed. The mortgagee was ultimately unable to recover on the policy only because it had failed to provide the mortgagor with requisite statutory notice of intent to pursue a deficiency judgment, which we held sufficiently discharged the mortgage debt so as to prevent any further recovery by the mortgagee.

Although earlier Massachusetts cases construe different versions of the Massachusetts statutory fire insurance policy, they draw a consistent distinction between the insurable interest of the mortgagee under a mortgage clause and that of an owner. See *Boston Coop. Bank* v. *American Cent. Ins. Co.*, 201 Mass. 350 (1909); *Trustees of Thayer Academy* v. *Corporation of the Royal Exch. Assur. of London*, 281 Mass. 150 (1932); *Schanberg* v. *Automobile Ins. Co. of Hartford*, 285 Mass. 316 (1934).

In *Boston Coop. Bank*, the Supreme Judicial Court construed a policy condition that would void the policy if the property were sold without the insurer's written assent. The policy was made payable to the "mortgagee, as its interest may appear." Before a fire occurred destroying the property, and without the consent of the insurer, the mortgagee foreclosed and sold to itself at the foreclosure sale. This was considered a " 'sale' within the meaning of the word as used in the policy," one which conveyed "all the title, both of the mortgagor and the mortgagee," just as would be the case were a third party the purchaser at the foreclosure sale, and voided the policy as to the plaintiff mortgagee. The rights of the mortgagee under the policy "were terminated and the ownership entirely changed . . . ." *Boston Coop. Bank* v. *American Cent. Ins. Co.*, 201 Mass. at 351.

In *Thayer*, the court construed policy language making the policy payable to the plaintiff mortgagee "as interest may appear under the present or any future mortgage." *Trustees of Thayer Academy* v. *Corporation of the Royal Exch. Assur. of London*, 281 Mass. at 152. In brief, the series of transactions giving rise to the claim were that, in 1926, Thayer was the mortgagee of certain property protected under the mortgage

clause of the policy; in 1928, Thayer foreclosed and took title as owner, with the insurer adding a rider insuring Thayer as owner; in 1929, Thayer sold to a third party and once again became a mortgagee, transferring to the new owner with the insurer's assent its interest as owner under the policy. A fire then ensued and Thayer sought recovery from the insurer as mortgagee. When describing the 1928 transaction, the court observed:

> "After the foreclosure sale the plaintiff [Thayer] no longer had an insurable interest as mortgagee . . . . In this juncture the parties made a new contract of insurance . . . insuring the plaintiff as owner of the property, differing in important respects as to the mutual rights and obligations of the parties from the contract which under the Massachusetts standard form of policy an insurer makes with a mortgagee" (citation omitted).

*Thayer, supra* at 154. The court then held that, with the 1929 transaction, Thayer had divested itself of all interest in the fire insurance policy and the insurer was liable only to the new owner at the time of loss.

In *Schanberg*, the fire loss took place two days after the foreclosure sale, where the mortgagees had bid in to purchase the property. The foreclosure deed, however, was never executed or delivered, a point of considerable significance to the court. In construing the policy provision that the policy would be void if the property were sold without the insurer's written consent, the court observed that, while a foreclosure sale that is followed by a deed from the mortgagee to itself as purchaser would void the policy, the auction sale was only a contract of sale and the bidder was not required to take title after the fire. The mortgagor, moreover, retains rights until the deed is given. "[T]he insured property was not 'sold' within the provision quoted from the policy. The policy remained valid in favor of the mortgagor as well as of the mortgagees." *Schanberg*, 285 Mass. at 320.

The significance of the deed reflected in these cases is predicated upon well established principles of Massachusetts property law. When a mortgage is given, it is upon the statutory condition and with the statutory power of sale to secure payment of the money loaned or the performance of any obligation

specified. G. L. c. 183, §§ 18 et seq. See *Charlestown Five Cents Sav. Bank* v. *White*, 30 F. Supp. 416, 418-419 (D. Mass. 1939):

> "The first important object of a mortgage is to give to the mortgagee an effectual security for the payment of a debt; another, is to leave to the mortgagor . . . the full control, disposition and ownership of the estate. . . . It is for all intents and purposes security for a debt, not an estate. Until foreclosure, the interest of the mortgagee is a right to acquire an estate in the land rather than an actual estate. . . .

> "The effect of the exercise of the power of sale [is] to terminate the estate of the mortgagor by forever barring him and those claiming under him from all right and interest in the mortgaged premises, which he had before the sale, and transferring an absolute estate to the mortgagee. The mortgagee could purchase at the sale and the transaction is of the same character and legal effect as in the case of purchase by a stranger.

> . . .

> "When the plaintiff [mortgagee] bought at the foreclosure sale and gave a deed to itself, it ended the equity of redemption of the mortgagor, and became responsible for the application of the purchase price as though it had received it upon a foreclosure sale to a stranger, and it was bound to apply it to the payment of the mortgage debt."

A mortgage is given to secure against impairment the mortgagor's obligation on the note. Once the mortgagee has purchased the property by foreclosure deed, "[t]he land [is] no longer mortgaged land. With relation thereto the plaintiff [is] no longer the mortgagee thereof holding title thereto for security, but [is] the owner thereof free from the mortgage." *Natick Five Cents Sav. Bank* v. *Bailey*, 307 Mass. 500, 504 (1940).

To summarize: if, at the time of loss the mortgagee remains such — whether or not there is a later purchase by the mortgagee through foreclosure — it has an insurable interest in the insured premises that is limited to the extent that the property secures the debt. "The interest of the mortgagee under

the fire policy is 'the amount which may be due the mortgagee on the mortgage debt . . . . It was not intended to include additional claims, but was intended to provide for a diminution of the interest of the mortgagee by the reduction, by payment or otherwise, of the amount of the debt.' " *Ben-Morris Co.* v. *Hanover Ins. Co.*, 3 Mass. App. Ct. at 779, quoting from *Attleborough Sav. Bank* v. *Security Ins. Co.*, 168 Mass. 147, 149 (1897). If, however, the loss follows foreclosure and the mortgagee's purchase of the property, the former mortgagee no longer has the same insurable interest in the property, which no longer secures a mortgage debt. The purchase price at the foreclosure will have been applied to the debt, and any deficiency that may remain can be reduced to an unsecured deficiency judgment against the former mortgagor. The property itself no longer secures that debt and, indeed, were the mortgagee-turned-owner then to sell the property to a third party at a price higher than it had paid at foreclosure, that surplus would not be applied to the deficiency but would remain with the mortgagee-turned-owner/seller. Such a third party owner could only insure its interest as owner by a policy expressly insuring the property owner.

Given the language of the Massachusetts statutory fire insurance policy, particularly the language of its mortgage clause, and the case law which in various contexts has construed the term mortgagee in a manner that draws a crisp distinction between one who holds title in order to secure against impairment of the mortgagor's obligation on the note, and one who holds title by foreclosure deed to property no longer mortgaged, we think the term "mortgagee" as used in the policy refers only to the former and not the latter. In its effort to persuade us to conclude otherwise, Ideal has called our attention to cases from numerous other States and to many treatises discussing the majority position there taken. Without question, the result we reach is against the weight of these authorities, but we think it is nonetheless the result consistent with our statute and case law. The difference in result, we think, is due largely to the divergence between the Massachusetts statutory mortgage clause and that found in the New York "standard policy" adopted in the majority of States.

(2) *The New York "standard policy."* As earlier discussed, the

Massachusetts statutory mortgage clause gives a full measure of protection to mortgagees to the extent that their rights to recover under the policy will not be invalidated by any act or default by anyone other than the mortgagee itself, whether before or during the policy term. The mortgage clause in the New York "standard policy," on the other hand, provides considerably greater protection to mortgagees.[8] That version typically provides not only that, as in the Massachusetts statute, the mortgagee's interest in the insurance "shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property," *Burritt Mut. Sav. Bank of New Britain* v. *Transamerica Ins. Co.,* 180 Conn. 71, 75-76 n.4 (1980), it also adds the language

> ". . . nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided . . . that the mortgagee . . . shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee. . . ."

*Ibid.*

In statutory policies substantially incorporating the New York standard policy mortgage clause, the term "mortgagee" has generally been construed to include a former mortgagee who, before the loss, took full title to the insured property. Otherwise put, the term "mortgagee" in those policies has come to be viewed as a convenient shorthand designation of the party whose interest is protected and not as a continuing condition of coverage that limits recovery to the period in which the party retains the precise status of mortgagee. The reasoning for this conclu-

---

[8]See 3 Freedman, Richards on the Law of Insurance § 17:29, at 215 n.92 (6th ed. 1990). There are also "easy read" versions of the New York standard policy mortgage clause which may not track precisely the language of the statutory form of policy mandated by a given State. These versions of the clause are to be read with reference to and as implying the applicable statutory conditions. See generally Steinmetz, Goldman & Sullivan, The Standard Mortgage Clause in Property Insurance Policies, 33 Tort & Ins. L.J. 81, 84-85 (1997). As to Massachusetts, see G. L. c. 175, § 2B(3).

sion typically rests expressly upon the mortgage clause language itself, as in *Federal Natl. Mort. Assn.* v. *Hanover Ins. Co.*, 243 Ga. 609, 610 (1979), where the Georgia Supreme Court observed, "The policy language protecting the mortgagee despite foreclosure or other proceedings or notice of sale relating to the property and despite change of title or ownership necessarily implies that the interest of the entity identified as the mortgagee continues regardless of whether the entity's status as mortgagee changes. Buying the property in after sale under power in the deed is not a 'change of ownership' such as requires notice to the insurer under the policy. The result of such proceedings is an enlargement or increase of the mortgagee's interest rather than a 'change of ownership.' " See *National Security Fire & Cas. Co.* v. *Eureka Fed. Sav. & Loan Assn.*, 188 Ga. App. 693, 694 (1988). See also *Allstate Ins. Co.* v. *Adana Mort. Bankers, Inc.*, 725 F.2d 1324 (11th Cir. 1984).

In like manner, the Pennsylvania Superior Court observed in *Laurel Natl. Bank* v. *Mutual Benefit Ins. Co.*, 297 Pa. Super. 473, 477-478 (1982):

> "It's clear from th[e New York 'standard policy'] language that the parties contemplated the possibility of foreclosure. Moreover, the insurer agreed to provide coverage for the mortgagee's interest in the property even if there was a 'foreclosure or other proceedings or notice of sale relating to the property' or a 'change in the title or ownership of the property.' The foreclosure referred to in the contract must mean a foreclosure by the mortgagee since the purchase of the property by anyone else at the foreclosure proceedings would extinguish the mortgagee's insurable interests. As an appellate court in Illinois stated, '(I)t is apparent that the provisions of the mortgage clause . . . were clearly intended to cover the mortgagee's interest as it succeeded to ownership through foreclosure' [citation omitted].

> "The provision requiring the mortgagee to notify the insurer of any 'change in ownership' must be construed as requiring notice only when someone other than the mortgagee acquires the property. The reference in the first paragraph to 'foreclosure or other proceedings' and

'change in . . . ownership' refer to two different occurrences. Since only a 'change in ownership' is spelled out as requiring notification in the second paragraph of that clause, an increase in the mortgagee's interest through foreclosure must not require notification."

See *Nationwide Mut. Fire Ins. Co.* v. *Wilborn*, 291 Ala. 193 (1973); *Burritt Mut. Sav. Bank of New Britain* v. *Transamerica Ins. Co.*, 180 Conn. at 77-79 (citing cases); *Guardian Sav. & Loan Assn.* v. *Reserve Ins. Co.*, 2 Ill. App. 3d 77 (1971); *Federal Natl. Mort. Assn.* v. *Great Am. Ins. Co.*, 157 Ind. App. 347 (1973); *Hartford Fire Ins. Co.* v. *Merrimack Mut. Fire Ins. Co.*, 457 A.2d 410 (Me. 1983); *Federal Natl. Mort. Assn.* v. *Ohio Cas. Ins. Co.*, 46 Mich. App. 587 (1973); *Consolidated Mort. Corp.* v. *American Security Ins. Co.*, 69 Mich. App. 251, 259 (1976) (Maher, J., dissenting), overruled by *Citizens Mort. Corp.* v. *Michigan Basic Property Ins. Assn.*, 111 Mich. App. 393 (1981); *Equitable Life Assur. Soc. of the U.S.* v. *Great Atlantic Ins. Co. of Del.*, 69 Misc. 2d 714, aff'd, 40 A.D.2d 956 (N.Y. 1972); *Shores* v. *Rabon*, 251 N.C. 790, aff'd, 253 N.C. 428 (1960); *Union Cent. Life Ins. Co. of Cincinnati, Ohio* v. *Codington County Farmers Fire & Lightning Mut. Ins. Co.*, 66 S.D. 561 (1939). Cf. *Standard Fed. Sav. Bank* v. *State Farm Fire & Cas. Co.*, 248 Neb. 552 (1995).[9] See generally 4A Appleman, Insurance Law § 2810 (rev. ed. 1969 & Fall interim supp. 2000); 5A Appleman, *supra* §§ 3401, 3403 (rev. ed. 1970 & supp. 2000); Couch, Insurance §§ 65:42, 65:59, 65:71, 65:73, 65:78 (3d ed. 1997); 3 Freedman, Richards on the Law of Insurance § 17:29 (6th ed. 1990); 43 Am. Jur. 2d *Insurance* §§ 1046, 1166, 1176 (1982); Steinmetz, Goldman, & Sullivan, The

---

[9]We are not persuaded by Ideal's characterization of the decisional law of other States which construes the more expansive New York standard form mortgage clause. Ideal suggests that the focus of those courts' analysis is not upon the particular language of the clause but upon whether it is a "standard clause" creating a separate and independent contract between the mortgagee and the insurer. The case law itself belies this. Indeed, the Federal case that Ideal selects as illustrative of the point, *Allstate Ins. Co.* v. *Adana Mort. Bankers, Inc.*, 725 F.2d 1324 (11th Cir. 1984), does little more than decline to slot the subject plain language policy clause as either a New York standard clause or something else. *Id.* at 1327. The 11th Circuit, far from writing on a clean slate, was construing a policy presumably written pursuant to the requirements of Georgia law, just as in *Federal Natl. Mort. Assn.*, 243 Ga. 609 (1979), and with the same result, notwithstanding its modernized format.

Standard Mortgage Clause in Property Insurance Policies, 33 Tort & Ins. L.J. 81 (1997).

(3) *Comparison of New York and Massachusetts statutes*. The Massachusetts standard policy mortgage clause on its face contains fewer protections for mortgagees than the counterpart New York standard policy mortgage clause. We note in this regard that, before the Massachusetts standard policy was adopted in 1951, "[t]he House report recommending the bill which was adopted as St. 1951, c. 478, indicates that the New York standard form was before the committee." *In-Towne Restaurant Corp.* v. *Aetna Cas. & Sur. Co.*, 9 Mass. App. Ct. 534, 540 n.6 (1980). The Legislature, however, did not incorporate the more expansive New York form of mortgage clause. Additionally, the Massachusetts standard policy since its adoption has been amended numerous times, yet despite the widespread adoption elsewhere of the more expansive New York standard policy mortgage clause language, the Legislature has left untouched the 1951 version of the Massachusetts statutory mortgage clause. "In the circumstances of the adoption of the Massachusetts statutory policy, . . . we cannot consider the omission of this clause to be accidental." *Id.* at 540-541.[10]

We are buttressed in our conclusion that the Massachusetts mortgage clause should not be construed as impliedly importing the broader protection afforded by the New York standard policy counterpart clause by yet other language in our statute. General Laws c. 175, § 99, not only mandates the form of fire insurance policies, but it expressly prohibits any deviation from that form "relative to the rights of a mortgagee." G. L. c. 175, § 99, Ninth. It is for the Legislature and not for the courts to allocate economic risks as between mortgage lenders and insurers; it has done so here and we must give effect to the plain language of the statute as written and to the mortgage clause in the policy tethered to that language.[11] Further, the result we reach imposes no greater burden on former mortgagees who purchase at

[10]The clause at issue in the *In-Towne* case was the fraud and concealment clause. The New York standard policy version contained a provision requiring the insured to submit to examinations under oath, while the Massachusetts statutory policy version did not. 9 Mass. App. Ct. at 540.

[11]Similarly, we acknowledge that our holding today results in what could be considered a "windfall" for the insurer, given that the premium payments on

foreclosure than upon third parties who do so. Each may protect itself by obtaining a policy in its own name upon foreclosure. We discern no error in the judge's allowance of Hingham's motion for summary judgment in this respect.[12]

III. *Ideal's reach and apply claim.* Ideal obtained a deficiency judgment against the Zichelles. It seeks to satisfy this judgment by reaching and applying the obligation it asserts that Hingham has to the Zichelles under the insurance policy for personal property damage the Zichelles suffered in the fire. Ideal asserts this reach and apply claim not as an insured under the policy, but as a judgment creditor of the Zichelles.

The Zichelles failed to pursue their personal property claim against Hingham; of particular import is their failure to bring suit against Hingham within the two-year limitations period set forth in G. L. c. 175, § 99. The Zichelles' claim is thus time barred. *Goldsmith* v. *Reliance Ins. Co.*, 353 Mass. 99, 101 (1967). With respect to the insurance proceeds that Ideal seeks to reach and apply, Ideal's rights stand no higher than those of the Zichelles against Hingham. See *Cassidy* v. *Liberty Mut. Ins. Co.*, 338 Mass. 139, 143 (1958). See also *Potter* v. *Great Am. Indem. Co. of N.Y.*, 316 Mass. 155, 157 (1944); *O'Kane* v. *Travelers Ins. Co.*, 337 Mass. 182, 184-185 (1958). Because the Zichelles' claim against Hingham is time barred and they cannot recover under the policy, the judge correctly concluded that there is no claim that Ideal may now reach and apply. Ideal suggests, however, that because it brought the present lawsuit within the statutory two-year period, the Zichelles' reach and apply claim, which Ideal wishes to assert and pursue in the Zichelles' stead, somehow still has vitality. Ideal offers no case support for this novel contention and we discern no merit in the idea.

IV. *Conclusion.* Because Ideal's action against Hingham included a prayer for declaratory relief, see note 2, *supra*, the motion judge was required to make a declaration of the parties'

the policy were current at the time of the fire. Nevertheless, we find the result we reach unavoidable under the language of the statute.

[12]Given our holding that Ideal was not a mortgagee within the meaning of the policy at the time of the fire and cannot recover for the loss, we need not reach the issue of whether Ideal was required to give notice of change of ownership to Hingham.

rights. See *Vergato* v. *Commercial Union Ins. Co.*, 50 Mass. App. Ct. 824, 829 (2001), and cases cited. The judgment is to be modified to declare that, at the time of the fire loss, Ideal was not a mortgagee within the meaning of the Zichelles' insurance policy, and Ideal therefore cannot recover from Hingham for the loss. As so modified, the judgment is affirmed.

*So ordered.*